[No. 33110-8-I.    Division One.    May 15, 1995.]

*In the Matter of the Marriage of* JULIE ARVEY, *Respondent, and* RICHARD ARVEY, *Appellant.*

*Howard Bartlett* and *Taylor Kiefer & Bartlett,* for appellant.

*Pamela Larson, H. Michael Fields,* and *Anderson & Fields,* for respondent.

COLEMAN, J. — Richard Arvey appeals the trial court's order denying his petition for modification of child support and the trial court's order adjusting child support pursuant

to the dissolution decree. Richard contends that the trial court erred by (1) failing to find a substantial change of circumstances, (2) designating him as the transfer payment obligor, and (3) failing to use a "split-custody" method to apportion child support.[1] We vacate and remand for recalculation of child support.

# I
## FACTS

In May 1991, Richard and Julie Arvey dissolved their marriage. Under the terms of the dissolution decree, Julie received primary residential care for the parties' two children, Aaron and Sarah. At that time, the children collectively spent 58 percent of their residential time with Julie and 42 percent of their residential time with Richard. Based on Richard's net income of $4,725 and Julie's net income of $0, the trial court designated Richard as the transfer payment obligor and ordered him to pay Julie $913 per month in child support. The decree set a 2-year child support review for May 1993 and specified that an interim adjustment was not appropriate in the absence of a " 'substantial non-voluntary change in the financial circumstances of the parties.' "

On February 5, 1993, Richard and Julie entered into an arbitration agreement, changing the children's residential placement. Under the agreement, Richard became the primary residential caretaker for Aaron and Julie remained the primary residential caretaker for Sarah.

Richard thereafter filed a petition to modify child support, setting forth the following reasons to show a substantial change of circumstances: (1) a decrease in his net monthly income; (2) Julie's reemployment; and (3) Aaron's change in primary residence. A trial by affidavit commenced on May 28, 1993, regarding both the motion to modify and the 2-year child support review. The trial court denied Richard's motion

---

[1]Because Richard offers no argument or authority to support his contention that the support award should have been retroactively applied, we do not address that assignment of error. *State v. Lord*, 117 Wn.2d 829, 853, 822 P.2d 177 (1991) (stating that court will not review errors unsupported by argument and citation to legal authority), *cert. denied*, 113 S. Ct. 164 (1992).

to modify, finding no substantial change of circumstances, but nevertheless adjusted the transfer payment obligation pursuant to the dissolution decree's 2-year review requirement. The trial court determined that the parties had a net monthly income of $6,010 (Richard/$3,995 and Julie/$2,015). Of this amount, the trial court found that Richard's proportional share was 66.5 percent and that Julie's proportional share was 33.5 percent. Using the 2-child family column on the standard support calculation grid, the trial court set the total support obligation at $1,340 ($670 per child). Based on each parties' proportional share of income, Richard's support obligation after a health care credit of $214 ($107 per child) was $677.10 and Julie's was $448.90. The trial court then designated Richard as the transfer payment obligor, requiring him to pay Julie $677.10 per month in child support. Both parties' requests for deviations were denied, as was Richard's motion for reconsideration. Richard appeals.

## II
### MOTION TO MODIFY: SUBSTANTIAL CHANGE OF CIRCUMSTANCES

The first issue that we are asked to decide is whether the trial court abused its discretion by denying Richard's petition for modification on the basis that he had not met his burden of proving a substantial change of circumstances.

■■ To succeed on a motion to modify child support, the moving party must show a substantial change of circumstances since the entry of the dissolution decree. RCW 26.09.170. The change of circumstances must have been uncontemplated at the time the decree was entered. *Holaday v. Merceri*, 49 Wn. App. 321, 331, 742 P.2d 127 (citing *In re Marriage of Zander*, 39 Wn. App. 787, 790, 695 P.2d 1007 (1985)), *review denied*, 108 Wn.2d 1035 (1987). In the present case, these requirements must additionally be viewed in light of the parties' dissolution decree, which stated that the order of child support could be modified prior to the 2-year review only for a substantial and nonvoluntary financial change. A reviewing court will not reverse a trial court's decision about whether a substantial change of circum-

stances has occurred absent a manifest abuse of discretion. *Holaday*, at 331 (citing *Lambert v. Lambert*, 66 Wn.2d 503, 508, 403 P.2d 664 (1965)).

Richard contends that the trial court abused its discretion by denying his petition for modification because three substantial and uncontemplated changes occurred since the decree was entered: (1) his net monthly income decreased; (2) Julie obtained employment; and (3) he became Aaron's primary residential caretaker. We reject Richard's contention for the reasons that follow.

First, while it is true that Richard's net monthly income decreased in 1992 by approximately $962, the record supports the trial court's finding that this decrease was due to a poor return on Richard's $362,200 investment in stocks and bonds that year, and not because of any permanent income change. Moreover, the record supports the trial court's finding that Richard's decrease in income was essentially offset by his decrease in living expenses. Specifically, it is undisputed that Richard and his family were living permanently in a home rent free.

Second, at the time the decree was entered, the trial court contemplated that Julie's reemployment would be considered during the May 1993 review and not before then. In particular, the court anticipated that there would be a period of adjustment following Julie's June 1992 graduation. Thus, while Julie's employment status changed since the entry of the decree, we find that it was not an uncontemplated change.

Third, Richard *voluntarily* assumed primary caretaking responsibilities for Aaron, which necessarily included an additional financial burden.[2] In any event, even if we viewed the residential change as being outside the language of the decree, the record is devoid of any documentary evidence, aside from Richard's declaration, showing that the change in residence significantly affected his expenses.[3] Richard asks

[2] In some cases, there may be circumstances in which a voluntary financial change will support a petition for modification. This, however, is not such a case.

[3] In this regard, the trial court stated:

"With regards to the change in Aaron's residential schedule, there has not been any evidence presented to this Court that indicates that there has been a

this court to consider additional financial information that he submitted in support of his motion for reconsideration, but, as Julie points out, Richard never assigned error to the trial court's denial of that motion. Therefore, the only evidence before us is that which was offered at the review hearing. Moreover, even if we were to consider such evidence, Richard has failed to specify where the supporting documentary evidence is located in the record. Indeed, he only points to several summary statements that counsel made in his memorandum in support of reconsideration. Under these circumstances, we therefore find that the trial court did not abuse its discretion by refusing to find a substantial change of circumstances and by denying Richard's petition for modification.

### III

### Two-Year Review: Split-Custody Support

A. Did the parties maintain a "split-custody" arrangement?

The next issue that Richard asks us to decide is whether the trial court erred by designating him as the transfer payment obligor when he has primary residential care for one child 66 percent of the time and Julie has primary residential care for the other child 60 percent of the time.

In its findings and conclusions, the trial court found that Richard and Julie evenly shared residential custody of their two children, stating: "The father's residential schedule with Aaron has changed from 34% to 66%. Given his residential schedule with Sarah, this is a 50/50 arrangement as to both children for the entire year." The trial court then assigned the base child support obligation to Richard in full, designating him as the transfer payment obligor.

---

significant increase in expenses as a result of the change in the residential schedule from approximately 34 percent to 60 percent.

"I tried to look through the financial affidavits and even his checking account records to see if I could see any figures that were denominated as being directly due to Aaron. And in terms of the fact that the residential schedule and the change in that residential schedule has made a substantial change in circumstances, I cannot make that finding[.]"

On two alternative grounds, Richard contends that the trial court erred by finding him the transfer payment obligor. First, Richard argues that because he spends 53 percent of the collective residential time with both children, he is the primary residential caretaker and, accordingly, the obligee. Alternatively, Richard argues that because both parents are the primary residential caretaker for one child, each party is essentially an obligor and an obligee.

If both of the children equally spent 53 percent of their residential time with Richard, then he would likely be correct, under his first argument, that the trial court erred by designating him as the transfer payment obligor instead of the obligee. However, under the terms of the parties' arbitration agreement, Aaron spends 66 percent of his time with Richard and Sarah spends 60 percent of her time with Julie. This residential schedule is therefore consistent with a "split-custody" arrangement and not, as the trial court found, an equally shared residential arrangement. Accordingly, Richard correctly contends, under his second argument, that the trial court erred by designating him as the sole transfer payment obligor; in a split-custody arrangement, each party should be viewed as both an obligor and an obligee.

B. What is the appropriate method for calculating child support under a split-custody arrangement?

Given the parties' split-custody arrangement, the next issue that we must decide is whether the trial court used an acceptable method of calculation to apportion the transfer payment obligation.

When the Legislature enacted Washington's child support statute, RCW 26.19, it did not establish a method for calculating child support when each parent has primary residential care of one or more of the children. Washington courts have therefore been faced with the task of fleshing out an acceptable method that is consistent with the overall purpose of the act.

In *In re Marriage of Oakes*, 71 Wn. App. 646, 861 P.2d 1065 (1993), a panel of this court was asked to decide

whether, in the context of a split-custody arrangement, the trial court erred by calculating child support under the 2-child economic table, instead of treating the parties as if they each had a separate 1-child family. Specifically, in that case, David and Gail Oakes each received primary residential care for one of their two children. Based on the parties' joint net monthly income of $5,459, the trial court determined that David's proportional share was 59.8 percent and Gail's was 40.2 percent. The trial court then calculated each party's total child support obligation under the 2-child family column on the standard support grid. The total support obligation under the grid was $1,390. Of that total obligation, David's proportional share was $831.22 and Gail's was $558.78. The trial court ordered David to pay Gail the difference between those two figures, $272.44, as a transfer payment. David appealed, arguing that the trial court should have calculated each support obligation separately by household under the 1-child family column on the standard support grid. *Oakes*, at 648.

On appeal, a panel of this court found no error, holding that while the Legislature had not established a method for calculating child support in split-custody situations, the trial court's application of the economic table was consistent with the child support statute. In particular, this court relied on RCW 26.19.011(1), which provides that each party's basic child support obligation be "determined from the economic table based on the parties' combined monthly net income and the number of children for whom support is owed." *Oakes*, at 650-51. This court additionally indicated that because the Legislature had not specifically dealt with the issue of child support in a split-custody arrangement, trial courts could consider, after setting the parties' standard support obligation, whether a deviation under RCW 26.19.075 was appropriate. *Oakes*, at 651. In this regard the court stated:

> The very fact that the schedule does not specifically provide direction when both parents have custody of one or more of the children is a basis for a deviation if strict application of the Table would result in a significant disparity in the amount of support available for the children in each household. If the

findings of fact and conclusions of law support a decision to deviate from the Table, the court may then exercise its discretion to order an appropriate deviation that will assure that both children are protected with adequate, equitable and predictable child support as required by RCW 26.19.001.

(Footnote omitted.) *Oakes*, at 651-52.

█ In this case, we are asked to decide a slightly different question than that which was presented in *Oakes*; namely, we must decide what the appropriate method of calculation is for *apportioning* the total amount of child support owed in a split-custody arrangement. In *Oakes*, the method used by the trial court was essentially sound. We find, however, that an additional step in that method is required to fairly apportion each parent's basic obligation. Specifically, in *Oakes*, the trial court calculated each parent's basic obligation using the "two-child" portion of the economic table (*i.e.*, David $831.22 and Gail $558.78). The trial court then subtracted the two amounts and ordered David to pay the difference. The problem with this final amount is that it still assumes that one parent, Gail, is the primary residential caretaker of *both* children. That is to say, the method applied in *Oakes* does not equitably apportion the amount owed based on each parent's primary caretaking responsibility. Accordingly, we find that once each parent's basic or net obligation has been determined, the trial court must adjust this figure to reflect each parent's proportional share. Each parent's proportional share, in turn, will depend on the number of children in his or her household.

Thus, in this case, where each parent is the primary residential caretaker of one child, the support obligations should have been calculated as follows:[4]

| | | |
|---|---|---|
| Monthly Net Income | = 3995.47 (father) | 2015.15 (mother) |
| Combined Monthly Net Income | = 6010.62 | |
| Basic Support Obligation Per Child (Economic Table) | = 670 (child #1) | 670 (child #2) |
| Total Child Support Obligation | = 670 (child #1 with father) | |
| | +670 (child #2 with mother) | |
| | 1340 | |

[4]*For reasons addressed later, we have excluded the health care credit given to Richard from this example. We also note that the facts of this case do not require us to determine the appropriate method of apportioning the standard support obligation in split custody cases where the children are in different age brackets.*

| | | |
|---|---|---|
| Proportional Share of Income | = .665 (father) | .335 (mother) |
| Each Parent's Basic Obligation | = 891.10 (father) | 448.90 (mother) |
| Each Parent's Net Obligation | = 891.10 (father) | 448.90 (mother) |
| Split-Custody Adjustment | = 1/2 of 891.10 = 445.55 (father) | |
| | = 1/2 of 448.90 = 224.45 (mother) | |
| | 445.55 (father) | |
| | −224.45 (mother) | |
| Transfer Payment Obligation | = 221.10 (father owes mother) | |

For purposes of illustration, child support in a 3-child split-custody arrangement would be calculated as follows:

| | | |
|---|---|---|
| Monthly Net Income | = 3995.47 (father) | 2015.15 (mother) |
| Combined Monthly Net Income | = 6010.62 | |
| Basic Support Obligation Per Child (Economic Table) | = 559 (child #1) 559 (child #2) | |
| | 559 (child #3) | |
| Total Child Support Obligation | = 559 (child #1 with father) | |
| | 559 (child #2 with mother) | |
| | +559 (child #3 with mother) | |
| | 1677 | |
| Proportional Share of Income | = .665 (father) | .335 (mother) |
| Each Parent's Basic Obligation | = 1115.21 (father) | 561.80 (mother) |
| Each Parent's Net Obligation | = 1115.21 (father) | 561.80 (mother) |
| Split-Custody Adjustment | = 2/3 of 1115.21 = 743.47 (father) | |
| | = 1/3 of 561.80 = 187.27 (mother) | |
| | 743.47 (father) | |
| | −187.27 (mother) | |
| Transfer Payment Obligation | = 556.20 (father owes mother) | |

In this case, the trial court appears to have applied an approach similar to that used by the trial court in *Oakes*. As we have explained, that method, without the split-custody adjustment, does not equitably apportion the standard support obligation. Therefore, we must vacate the order of child support and remand for recalculation consistent with this opinion.[5]

Richard additionally contends that if this court decides to remand for recalculation of child support, then the trial court need not address whether any deviations apply because Julie has not appealed the court's deviation decision and because he does not seek a deviation if child support is equitably

[5]Richard offers a comparable method for apportioning child support in a split custody arrangement, but we find that the method set forth here is less confusing and easier to apply.

apportioned. The record reflects, however, that the trial court denied the parties' requests for deviations based on the significant dollar amount of the transfer payment obligation that it determined Richard owed Julie. Accordingly, the trial court might have ruled differently on the deviation issue had it originally applied the method set forth here. Therefore, on remand, the trial court may reconsider whether any deviations apply. In addition, in setting forth our example of how the child support obligation should have been calculated, we excluded the health care credit given to Richard. On remand, the trial court should reconsider, in light of the parties' split-custody arrangement, whether this credit applies only to Richard or whether it should be evenly divided between the parties.

The order of child support is vacated and remanded for recalculation.

BAKER, C.J., and GROSSE, J., concur.