[No. 49896-7-I.   Division One.   November 18, 2002.]

*In the Matter of the Marriage of* BERYL JOAN WATERS, *Respondent*, and FOSTER DENNIS ANDERSON, *Appellant*.

212

*Marijean E. Moschetto* (of *Moschetto & Koplin, Inc., P.S.*) and *Catherine Wright Smith* (of *Edward, Sieh, Smith & Goodfriend*), for appellant.

*Christopher S. Nelson*, for respondent.

APPELWICK, J. — This is an appeal from a superior court revision of a commissioner's ruling on child support enforcement. The 1998 child support order at issue was an *Arvey*-type[1] order for two children. The son resided a majority of

---

[1] *In re Marriage of Arvey*, 77 Wn. App. 817, 894 P.2d 1346 (1995).

the time with the mother, and the daughter resided a majority of the time with the father. The order offset the parents' respective support obligations for the child not residing with them. The result was a net transfer payment from the father. The child support for the son was terminated when he was emancipated, but no order was entered changing the transfer payment amount or the recipient. The father seeks payment from the mother for child support due for the daughter who resided with him, for the period after his offsetting obligation for the son had been terminated. We hold that the mother had a continuing obligation during that period to pay child support for the daughter. We reverse and remand.

## FACTS

The marriage between F. Dennis Anderson and Beryl Waters was dissolved by decree of dissolution in King County in 1988. Anderson and Waters had two children, Casey Anderson, born August 30, 1981, and Karina Anderson, born December 7, 1982. Although both children initially lived with Waters, on October 30, 1998, the trial court entered an order modifying the parenting plan to reflect a change in the children's residential placement. Under the 1998 order, Karina resided a majority of the time with Anderson and Casey resided a majority of the time with Waters.

As required under RCW 26.19.035, child support schedule worksheets were attached to the 1998 order for support. These worksheets stated the following: The father's monthly net income was $2,552.82, and the mother's was $1,753.15, for a combined monthly net income of $4,305.97. Based on these figures, Anderson's proportional share was calculated as being 59.3 percent and Waters' as being 40.7 percent. The basic support obligation was $625.00 for each child in a two-child family where the children are age twelve or older, for a total of $1,250.00 per month. Taking into account special expenses and support credits, Ander-

son's net support obligation was $758.10, and Waters' was $429.40. Thus, because one of the parties' two children resided a majority of the time with Waters and one with Anderson, the *Arvey*[2] adjustment was made as follows:

1/2 of $758.10 = 379.05 (Father)

1/2 of $429.40 = 214.70 (Mother)

In other words, Anderson owed Waters $379.05, and Waters owed Anderson $214.70. The trial court offset these amounts. This resulted in a net transfer payment obligation of $164.35 from Anderson to Waters. Anderson was the only designated obligor in the order of support.

On August 31, 2000, the court entered an order terminating the support obligation as to Casey. The 2000 order was based on stipulated findings and ordered that Anderson's and Waters' support obligation for Casey was terminated effective June 23, 2000. It contained no provisions regarding Karina, and its only effect on the 1998 order of support was to terminate support for Casey. No motion to adjust or modify support for Karina was filed. Nor were stipulated worksheets or an order of support for her filed.

On September 24, 2001, Anderson brought a motion to establish postsecondary education, judgment for child support, and extraordinary expenses including travel. In his motion, Anderson (1) acknowledged his support for Karina's postsecondary education, and for Casey should he elect to return to school, and sought a proportionate contribution for postsecondary education from Waters; (2) sought a judgment for back child support from Waters for July 2000 through June 2001, the period following Casey's emancipation during which Karina resided a majority of the time with him; and (3) sought a division of travel expenses. Both parties agreed to contribute toward Karina's postsecondary education, and toward Casey's postsecondary education should he choose to return to school. That issue is not before us. The travel expense issue was not made part of the appeal.

---

[2] *Arvey*, 77 Wn. App. 817.

On November 20, 2001, the court established judgment in favor of Anderson, awarding him past due support for Karina. On December 26, 2001, the court granted Waters' motion for a revision of the November 20 ruling, denying Anderson the right to collect past due support for Karina.

The parties do not dispute their incomes, the existence of worksheets, the percentage of income each should contribute, or that Karina resided with her father a majority of the time. Nor do they dispute the amount of support due if an obligation exists under the 1998 order.[3] The parties' sole dispute is whether Waters was obligated to make a transfer payment to Anderson for child support for Karina following Casey's emancipation.[4]

Anderson argues that the 1998 order for child support established that both he and Waters were obligors, and that upon Casey's emancipation, Waters became the only remaining obligor. Anderson argues that Waters owed him a child support transfer payment because Karina continued to reside a majority of the time with him. Anderson also requests interest and attorney fees. Waters requests attorney fees.

## ANALYSIS

### I. Standard of Review

■ "We review questions of law de novo." *Parry v. Windermere Real Estate/East, Inc.*, 102 Wn. App. 920, 925, 10 P.3d 506 (2000), *review denied*, 143 Wn.2d 1015 (2001).

---

[3] The father had rightly abandoned an earlier claim that the emancipation of the son automatically increased the child support basis to the "one-child" category. The mother has not challenged the calculation of the amount of support due, and we do not address the effect of special expenses or support credits on the amount owed in this case.

[4] Anderson sought support for Karina from Waters approximately one year after Casey's emancipation, well within the statute of limitations for such actions. For support orders entered after July 23, 1989, each monthly installment may be enforced for 10 years after the youngest child named in the order turns 18. RCW 4.16.020(3). This court notes that Waters resides in North Carolina. In an interstate collection case under the Uniform Interstate Family Support Act, chapter 26.21 RCW, the longer of the issuing or responding state's statute of limitations governs. RCW 26.21.510.

## II. Argument

Anderson alleges that "[t]he mother's support obligation to the father for the support for Karina . . . was determined in the 1998 order for support." Anderson supports his allegation with two claims. First, he maintains that the worksheets attached to the 1998 order of support, which calculate Waters' proportional obligation, are a part of the order of support itself. Second, he argues that under *Arvey*, which governs support obligations when not all of the children reside a majority of the time with the same parent, each parent is considered both an obligor and an obligee, even if the court offsets the obligations to establish one transfer payment. He further argues that upon Casey's emancipation, Anderson's payment obligation for Casey terminated, but the support obligation for Karina remained in place. Since Karina remained in residence with Anderson, he argues Waters became the sole obligor.

Waters, on the other hand, claims that the worksheets are not a part of the 1998 order for child support, which "exists separately." She urges the court to rely upon only paragraph III of the 1998 order of support, which states that Anderson is the obligor. Therefore, Waters concludes, any finding that she is also an obligor would constitute an impermissible retroactive modification of support.

## III. *Arvey* Calculations

The legislature enacted the child support schedule, upon which the worksheets are based, in part to ensure that child support is equitably apportioned between parents. RCW 26.19.001. The *Arvey* court introduced a method of apportioning the total amount of child support owed in arrangements where one or more children, but not all of the children, reside a majority of the time with one parent, and the remaining child(ren) reside a majority of the time with the other parent. Here, Karina resided a majority of the time with Anderson, and Casey resided a majority of the time with Waters. The *Arvey* court held that in such arrangements, "each party should be viewed as *both an*

*obligor and an obligee.*" 77 Wn. App. at 823 (emphasis added).

Under *Arvey*, the presumptive support amount is calculated by: (1) determining the total child support obligation for all children; (2) determining each parent's basic obligation based on the proportionate share of each; (3) adjusting the basic obligation based on the number of children in each household; and (4) if necessary, subtracting the figures to yield the transfer payment. 77 Wn. App. at 825-26.[5] Anderson and Waters' combined monthly net income was $4,305.97. The basic child support obligation was $625.00 each for Casey and Karina. Anderson's proportional share of income was 59.3 percent, and Waters' was 40.7 percent. After worksheet adjustments for extraordinary expenses, their net support obligations were $758.10 and $429.40, respectively. Finally, these figures are divided in two because one of the children resided with each parent. Thus, Anderson owed Waters one-half of $758.10, and Waters owed Anderson one-half of $429.40.

Anderson is correct that the worksheets are a part of the 1998 order for support. First, worksheets are mandated by statute, must be signed under penalty of perjury, and must be attached to the support order or signed by the judge if filed separately. RCW 26.19.035. As a matter of law, the worksheets are the factual basis of the order of support. Second, the 1998 order for support unequivocally states that "[t]he child support worksheet which has been approved by the court is attached to this order and is *incorporated by reference* or has been initialed and filed separately and is *incorporated by reference.*" (Emphasis added.)

The worksheets conclusively establish that both Anderson and Waters were ordered to provide child support for Casey and Karina. The *Arvey* calculations on the worksheets make each party aware that he or she had

---

[5] Casey and Karina are in the same age category so the issue does not arise, but note that the *Arvey* formula does not work when children are in different age categories. *See* Gail Stone & Marlin Appelwick, Practice Alert, *Understanding* In re Marriage of Arvey, *77 Wn App 827 [1995]*, 49 WASH. ST. B. NEWS, Sept. 1995, at 49.

support obligations, and the amount of those obligations: Anderson owed Waters one-half of his $758.10 obligation, and Waters owed Anderson one-half of her $429.40 obligations. Under these circumstances, as a matter of law, "each party should be viewed as both an obligor and an obligee." 77 Wn. App. at 823.

Waters accurately states that paragraph III of the 1998 order of support names only Anderson as an obligor, but she is incorrect that this clause means she was not also an obligor under the 1998 order of support. To accept Waters' position, one must conclude either (1) that Waters never had an obligation to Karina under the 1998 order for support, or (2) that Waters' obligation to help support Karina was extinguished under the 2000 termination order because when support stopped for Casey, it also stopped for Karina. Neither of these positions is tenable.

Paragraph III of the 1998 order of support cannot be read in isolation. The 1998 order of support expressly incorporates the worksheets with the *Arvey* calculations. If Waters' obligation for Karina had been extinguished, there would have been no offset to Anderson's support. The net transfer payment from Anderson would have been $379.05, not $164.35. The designation of transfer payment and of obligor and obligee in the order of support was based on the offset of the parents' respective obligations, not on a modification of the obligations calculated on the worksheets. Paragraph III of the 1998 order of support could and perhaps should have identified both Waters and Anderson as obligors.[6] This omission, however, did not extinguish Waters' obligation for support.

"A child support obligation does not change without court action, except where a decree provides specifically for an automatic periodic adjustment." *In re Marriage of Abercrombie*, 105 Wn. App. 239, 243, 19 P.3d 1056, *review*

---

[6] The problem before us could also have been avoided by entry of a separate order of support for each child, whether or not the resulting transfer payments were allowed to be offset. For purposes of support enforcement and the child support registry, separate, non-offsetting orders more accurately reflect statutory support obligations.

*denied*, 144 Wn.2d 1019 (2001); *see* RCW 26.09.100(2), .170(1), .170(5)(d). The 1998 order contained no provisions for automatic periodic adjustment and is not at issue. The 2000 order served only to terminate support for Casey. The court action necessary to change child support is an order following motion for adjustment or a petition for modification. *Abercrombie*, 105 Wn. App. at 243; RCW 26.09.170(9)(a), .175(1). Although both parties were entitled at the time of the 2000 order to have a new order entered adjusting or modifying the 1998 order of support, neither party elected to do so. Thus, the 1998 order of support, which had assigned a net support obligation to both Anderson and Waters, remained in effect for Karina. Waters had a continuing support obligation which should have been satisfied by payment to Anderson after Casey's emancipation.

Accordingly, we reverse and remand to the trial court for calculations consistent with this opinion.

BECKER, C.J., and SCHINDLER, J., concur.

Reconsideration granted in part and opinion modified January 31, 2003.