[No. 52622-7-I.   Division One.   November 1, 2004.]

THE STATE OF WASHINGTON, *on the Relation of M.M.G,* *Respondent,* v. RICHARD SCOTT GRAHAM, *Respondent,* MICHELE LEANN CUNLIFFE, *Appellant.*

932

*Patricia S. Novotny*, for appellant.

*Catherine Wright Smith* (of *Edwards, Sieh, Smith & Goodfriend, P.S.*) and *David J. Ordell*, for respondent Graham.

*Norm Maleng, Prosecuting Attorney*, and *Lori K. Smith, Deputy*, for respondent State.

KENNEDY, J. — Michele Cunliffe and Richard Graham are divorced and have two daughters, M.M.G. (DOB 12/16/89) and V.M.G. (DOB 3/23/91). The daughters together spend alternating weeks with each parent throughout the year. Graham was granted a deviation in his monthly support obligation in 1996, from $872.33 to $300, based on the significant amount of time the children spend with him.

In 2002, the State petitioned for modification of child support. Graham asked the court to apply *In re Marriage of Arvey*, 77 Wn. App. 817, 894 P.2d 1346 (1995) by analogy and split the parties' child support obligation equally because of the children's residential time with him. Cunliffe countered that *Arvey* was not applicable and that RCW

26.19.075 allowed for residential credit only when the children's needs were met by such arrangement. A court commissioner rejected Graham's arguments. The parents' combined monthly income exceeded $7,000. The commissioner extrapolated an increased net support obligation and deviated below that amount to order Graham to pay $800 per month. A trial court revised the order, refused to extrapolate, and applied *Arvey*. The court then split child support equally between the parents and ordered Graham to pay $403 per month, later revising this amount to $455 per month. Cunliffe appeals and Graham cross-appeals the court's refusal to give him credit for amounts paid pursuant to the commissioner's original order. We grant the appeal, reject the cross-appeal, and reverse and remand with instructions.

## FACTS

The parties' original parenting plan, entered on March 28, 1996, specified that the two children would reside one week with their father and the following week with their mother, alternating throughout the year. A child support order was entered the same day. This order estimated Graham's net monthly child support obligation at $872.33 and Cunliffe's net monthly child support obligation at $436.67. However, the court deviated from Graham's standard calculation finding that the "child[ren] spends [sic] a significant amount of time with the parent who is obligated to make a support transfer payment" and that the deviation did not result in insufficient funds in the receiving parent's household to meet the basic needs of the children. The court then ordered Graham to pay $300 per month to Cunliffe.

In August 2002, the State petitioned for modification of child support, asserting that the previous order was entered more than two years previously, that the parents' incomes had changed, and that at least one of the children had moved into a new age category for support purposes. Both parties had also remarried and had additional chil-

dren living at home—Graham had two additional children, and Cunliffe had five.

Graham responded to the petition and asked the court to modify the child support obligation. Graham requested that the court apply, by analogy, the holding in *Arvey*, 77 Wn. App. 817, a situation in which the court split the child support obligation where one child resided primarily with one parent and another child with the other parent. Graham requested that *Arvey* be applied "so that each parent pays support to the other custodial parent to assist in maintaining the costs and support of the children during the 50 percent of the time that the children reside with the other parent." Clerk's Papers at 22.

Cunliffe countered that application of the *Arvey* principles was improper because the parties "are not splitting children, we are splitting time." Cunliffe argued that halving child support obligations was appropriate in the *Arvey* situation because each parent was responsible for maintaining a household for only one child, but that application of those same principles would not be appropriate where each parent provided a complete household for both children. Cunliffe pointed out that child support must meet a child's basic needs and should provide additional support commensurate with the parents' income, resources, and standard of living. RCW 26.19.001. Cunliffe argued that RCW 26.19.075 allowed a court to deviate from the standard calculation if the child spent a significant amount of time with the obligor parent, but only if the deviation would not result in insufficient funds in the household receiving the payment to meet the basic needs of the child. Cunliffe asserted that she also had five other children in her household and noted the disparity between the parties' respective household incomes; over $10,000 per month for Graham and around $2,000 per month for Cunliffe.

The State agreed with Cunliffe's analysis, arguing that it would be inappropriate to apply *Arvey* to the present situation because each parent maintained costs for a full

household for both children. The State pointed out that the court could also choose to deviate from the standard child support obligation if the court found the obligor parent spent a significant amount of time with the children, pursuant to RCW 26.19.075(1)(d). The State also argued for extrapolation of the child support obligation because Graham's monthly income was clearly in excess of $7,000 even without imputing income to Cunliffe, pursuant to RCW 26.19.020.

A court commissioner rejected Graham's argument, declining to extend the *Arvey* holding "to cases in which the parties have equally shared residential time." The commissioner also commented that support should be extrapolated to reflect the fact that the monthly income of the parties was $8,801, and thus exceeded $7,000. However, the commissioner also opined that application of residential schedule credits in accordance with prior law would not make a sufficient reduction/adjustment in the child support in situations, as in the present case, where residential time is equally shared by the parents. The commissioner commented that a more liberal deviation in the net child support obligation was necessary, taking into consideration the best interests of the children and fairness to the parties.

Using the child support worksheets, the commissioner extrapolated to Graham a net support obligation of $1,629 per month. These worksheets reflected the income of each parent's new spouse, their assets, debts, and additional children. The commissioner then deviated substantially below the net support obligation of $1,629 per month and ordered Graham to pay Cunliffe $800 per month. The commissioner stated that the factual basis supporting the substantial deviation was that the children spent 50 percent of their time in each household on a "week-on/week-off basis," that each parent provided full resources to the children while living in their household, and that each household had substantial income and resources such that the deviation did not result in insufficient funds to Cunliffe's household to meet the basic needs of the children. This order was entered on February 12, 2003.

Graham filed a motion to revise the commissioner's ruling, and the trial court revised both the commissioner's decision to extrapolate an increased basic child support obligation based on the parties' incomes and the commissioner's determination that *Arvey* did not apply. The trial court estimated a much higher combined monthly net income than the commissioner had estimated, $10,174.21 rather than $8,801.00. The trial court calculated a net support obligation of $1,216.63 per month as to Graham and $410.72 per month as to Cunliffe. The court stated that "[i]n lieu of deviation, this court has applied the principles of *In re Marriage of Arvey*, 77 Wn. App. 817 (1995) . . . which fully recognizes the fact that each parent is required to provide a primary home for the children." Clerk's Papers at 235. The court then reduced each parent's obligation by half, reduced Graham's obligation further by the amount by which Cunliffe was obligated, and then ordered Graham to pay Cunliffe $403 per month.

Cunliffe filed a motion for reconsideration, asserting that *Arvey* was inapplicable and that extrapolation was proper. Cunliffe also pointed out that V.M.G. was 12 years of age and that the court had improperly calculated her basic level of child support. In his response to Cunliffe's motion Graham requested, for the first time, reimbursement of the overpayments made pursuant to the commissioner's ruling. Cunliffe responded that the request was untimely. The court denied Cunliffe's motion, but increased the transfer amount to $455 per month based on V.M.G.'s age, and denied reimbursement to Graham. This order was entered on June 3, 2003. Cunliffe appeals the trial court's application of *Arvey* and refusal to extrapolate the parties' income. Graham cross-appeals the court's refusal to give him credit for amounts paid for five months under the commissioner's original order.

## DISCUSSION

*Application of* In re Marriage of Arvey

■ Cunliffe first asserts that the trial court erred in concluding that the analysis of *Arvey*, 77 Wn. App. 817 is applicable to the facts of the present case, where children spend alternating weeks with each parent and each parent maintains a residence for both children. Generally, we review child support modifications and adjustments for abuse of discretion. *In re Marriage of Griffin*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). However, whether a trial court has properly applied the *Arvey* analysis in a child support case is a question of law, reviewed de novo. *See, e.g., In re Marriage of Waters*, 116 Wn. App. 211, 215, 63 P.3d 137 (2002).

■ In establishing the child support schedule, the legislature intended to ensure that every child support award satisfies the child's basic needs and provides additional financial support commensurate with the parents' income, resources, and standard of living. RCW 26.19.001; *In re Marriage of Leslie*, 90 Wn. App. 796, 803, 954 P.2d 330 (1998). The legislature also intended to equitably apportion the child support obligation between both parents. RCW 26.19.001; *In re Marriage of Ayyad*, 110 Wn. App. 462, 467, 38 P.3d 1033 (2002).

■ To meet these goals in determining the child support obligation, the trial court first determines the income of each parent and calculates their combined net monthly income. RCW 26.19.071. The court then determines the presumptive or advisory amounts of child support from an economic table contained in the statutory child support schedule based on the parents' combined net income. RCW 26.19.020, .071. The economic table is presumptive for combined monthly net incomes up to and including five thousand dollars but is advisory only for combined monthly net incomes that exceed five thousand dollars. RCW 26.19.020, .065(3). The court must enter written findings of fact when it deviates from either the presumptive or advi-

sory amounts set forth in the child support schedule. RCW 26.19.035(2), .075(3); *In re Marriage of Clarke*, 112 Wn. App. 370, 380, 48 P.3d 1032 (2002). *See also In re Marriage of Rusch*, 124 Wn. App. 226, 98 P.3d 1216 (2004).

This process for determining child support obligations is readily applicable to divorced family situations where the children reside a majority of the time with one residential parent. In those situations, the obligor parent is the one with whom the children do not reside a majority of the time and that parent makes a transfer payment to the parent with whom the children primarily reside. However, this court has previously recognized that the child support schedule set forth in chapter 26.19 RCW does not address the appropriate method of calculating child support where each parent has primary residential care of one or more children. *See, e.g., Arvey*, 77 Wn. App. at 822-23; *In re Marriage of Oakes*, 71 Wn. App. 646, 650, 861 P.2d 1065 (1993).

■ Thus, the *Arvey* court established a method for determining child support when one child resides primarily with one parent and another child or other children resides primarily with the other parent. *Arvey* called this arrangement a "split-custody" situation and held that in such situations each party should be viewed as both an obligor and an obligee to the other with whom one or more of their children reside. *Arvey*, 77 Wn. App. at 823. *Arvey* established that in such "split-custody" situations, after determining each parent's net child support obligation, the trial court should adjust the figure to reflect each parent's proportional share based on the number of children who primarily reside in his or her household.[1] *Arvey*, 77 Wn. App. at 823-26.

---

[1] For instance, two children lived with parent A (whose total obligation was $561.80) and one child with parent B (whose total obligation was $1,115.21). Parent A's obligation is divided by 1/3 ($187.27) and parent B's obligation divided by 2/3 ($743.47). The smaller amount would be subtracted from the larger, and the resulting amount becomes a transfer payment to parent A. *See Arvey*, 77 Wn. App. at 826.

Graham encourages this court to affirm the trial court's application of *Arvey* to the present situation and to hold that *Arvey* also applies to situations where parents equally divide residential time with their children. However, *Arvey* specifically distinguished "split-custody" situations from equally shared residential arrangements where the parents divide time with their children. *Arvey*, 77 Wn. App. at 823. Both M.M.G. and V.M.G spend an equal amount of residential time with each parent; they do not primarily reside with one parent or the other, they reside with both. The current situation presents a shared residential arrangement rather than the "split-custody" arrangement addressed by *Arvey*.

No case has applied *Arvey* where both parents spend an equal amount of residential time with all children. Further, application of the *Arvey* principles to shared residential arrangements, where each parent is required to provide a household to not just one, but to two or more children, often would result in disparate economic circumstances. Dividing the basic child support obligation by the number of children and then splitting it between the parents would qualitatively reduce the amount of funds available to the children in the household that is less financially well off. This would often result in not meeting the legislature's intent to satisfy the basic needs of the children and to provide additional financial support commensurate with the parents' income, resources, and standard of living. RCW 26.19.001.

In sum, because *Arvey* addresses "split-custody" situations rather than shared residential arrangements, and its application often would result in disparate financial circumstances to the detriment of the children, contrary to the intent of the child support statutes, we conclude that *Arvey* is not applicable to shared residential arrangements. Thus, the trial court erred when it applied *Arvey* by analogy to the present situation, and we reverse.

However, placing the entire child support obligation on one parent where the residential schedule is shared also would not meet the legislature's intention of equitably

apportioning the child support obligation between both parents. RCW 26.19.001. The legislature has allowed a deviation from either the presumptive or advisory amount of child support where the children spend "a significant amount of time with the parent who is obligated to make a support transfer payment," as long as the deviation will not result in insufficient funds in the household receiving the support to meet the needs of the children. RCW 26.19.075(1)(d). Such a deviation could be warranted in a situation where the children's residential time is shared between parents but would still be discretionary and focused on the legislature's primary intent to maintain reasonable support for the children in each household. Thus, it appears that the legislature has already considered and provided for the situation presented here.

We hold that where the residential care of children is not split between two households as in *Arvey*, but is instead shared as in this case, *Arvey* does not apply. Rather, a trial court must calculate the basic child support amount and may then deviate from that amount based on the amount of residential time spent with the obligor parent, pursuant to RCW 26.19.075, so long as doing so will not result in insufficient funds in the household receiving the support to meet the needs of the children while they are residing in that household. We remand for recalculation of the basic child support obligation and consideration of any deviation not based on *Arvey* that the court deems appropriate. Such deviation will require the trial court to enter findings of fact. RCW 26.19.035(2), .075(3).[2]

■ ■ We disagree with Cunliffe's argument that the trial court necessarily erred when it refused to extrapolate an increased net child support obligation because the parties' combined monthly income exceeded $7,000. Chapter 26.19 RCW provides that

---

[2] Although Cunliffe additionally asserts that we should apply the method set forth in the *American Law Institute's (ALI) Principles of the Law of Family Dissolution: Analysis and Recommendations* § 309, at 492 (2000), she did not argue these ALI principles in her first appellate brief nor in her argument to the trial court. Thus, we decline to consider them on appeal. *See* RAP 10.3(a)(5), (c).

[w]hen combined monthly net income exceeds seven thousand dollars, the court *may* set support at an advisory amount of support set for combined monthly net incomes between five and seven thousand dollars or the court *may* exceed the advisory amount of support set for combined monthly net incomes of seven thousand dollars upon written findings of fact.

RCW 26.19.020 (emphasis added). This statute grants the court express authority to exceed by extrapolation the amount calculated in the child support schedule when the parents' combined net monthly incomes exceed $7,000. *In re Marriage of Clarke*, 112 Wn. App. 370, 379, 48 P.3d 1032 (2002). While a trial court must consider what additional amounts might be paid where monthly net incomes exceed $7,000, the trial court retains discretion to decide whether or not to extrapolate above the advisory amounts. *In re Marriage of Fiorito*, 112 Wn. App. 657, 664-65, 50 P.3d 298 (2002).

The trial court here had information regarding the incomes of both parties as well as the incomes of their spouses, their debts and assets, their additional children and various expenditures including costs of child care. Because the trial court considered these factors, it does not appear that it abused its discretion solely by refusing to extrapolate in this particular case. While remand for recalculation of child support is necessary because the trial court erroneously applied *Arvey*, we emphasize that the trial court retains discretion to determine whether to extrapolate an increase in the child support obligation where the parents' combined monthly income exceeds $7,000. We also emphasize, however, that the trial court is not precluded from reconsidering extrapolation, in light of our rejection of the *Arvey* formula—it being unclear from the record whether the court rejected extrapolation entirely on its own merits under the facts of this case, or whether the primary reason for the rejection was based on *Arvey*. For a recent discussion by this court of principles guiding the trial court's exercise of discretion with respect to extrapolation, *see Rusch*, 124 Wn. App. 226.

■ ■ Graham cross-appeals the trial court's refusal to give him credit for the $1,985 he estimates that he paid under the commissioner's original orders. This request was made for the first time in Graham's response to Cunliffe's motion for reconsideration of the trial court's order. Graham fails to cite any authority to support his proposition that he should be credited this alleged overpayment, and thus we refuse to consider it on appeal. RAP 10.3(a)(5). Finally, to the extent that Graham could request reimbursement after revision of a commissioner's order by a trial court, it does not appear from the record that Graham either argued or proved to the trial court that the reimbursement would not cause an "undue hardship upon the receiving parent or the child." *See, e.g., In re Marriage of Stern*, 68 Wn. App. 922, 932-33, 846 P.2d 1387 (1993). Thus, it does not appear that the trial court abused its discretion in refusing to grant Graham reimbursement of the previously paid amounts.

Finally, Cunliffe seeks attorney fees on appeal, pursuant to RCW 26.09.140. Cunliffe has substantially prevailed on appeal and has shown need. Graham also has the ability to pay. We grant attorney fees to Cunliffe on appeal in an amount to be set by a commissioner of this court upon Cunliffe's timely application.

Reversed and remanded with instructions, all as set forth in this opinion.

Cox, C.J., and COLEMAN, J., concur.