# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| RONALD BRETT,<br><br>                 Appellant,<br><br>      v.<br><br>CAROLINE MARTIN, and<br>STATE OF WASHINGTON,<br>DEPARTMENT OF SOCIAL AND<br>HEALTH SERVICES,<br><br>                 Respondents. | DIVISION ONE<br><br>No. 79076-5-I<br><br>UNPUBLISHED OPINION<br><br><br><br>FILED: May 20, 2019 |

DWYER, J. — In 1983, the Supreme Court of Ontario imposed upon Ronald Brett spousal and child support obligations arising from his dissolved marriage to Caroline Martin. In 2011, the State of Washington, Department of Social and Health Services, sought to enforce the Ontario court's order against Brett, who is currently a Washington resident. Brett objected, averring that manifest incompatibility of Ontario and Washington's public policy forbade registration and enforcement of the order. Following a hearing, the Department issued a decision rejecting his arguments. The superior court affirmed this decision. Brett now appeals to us. Because his challenges to registration and enforcement of the order are without merit, we affirm.

I

Ronald Brett and Caroline Martin were married on May 18, 1963, and had two children together. On July 19, 1983, the marriage was terminated by a

decree of dissolution entered by the Superior Court of Vanderburgh County, Indiana. However, as that court did not have personal jurisdiction over Martin (who had moved to Ontario), the decree did not address spousal or child support obligations. Subsequently, these matters were tried in the Supreme Court of Ontario, which resulted in the issuance of the following order:

> THIS COURT DOTH ORDER AND ADJUDGE that the Respondent [Brett] shall pay to the Applicant [Martin] who has custody of the child, DEBBIE CAROL BRETT, born December 12, 1967, on the first day of each and every month commencing September 1, 1983 the sum of $1,300.00 (Canadian Dollars) support until January, 1986, at which time the payment will be reduced to $800.00 per month for support and maintenance of the wife in accordance with Section 71 of the Internal Revenue Code of 1954. *Such payments will continue until the death of the wife or until the Court otherwise orders.*

(Emphasis added.)

After making one payment of $1,300 in September 1983, Brett made no further spousal or child support payments. However, in November 1987, Brett and Martin agreed that Brett's attorney would transfer to Martin $6,000 of the proceeds Brett was to receive from unrelated litigation. Brett also agreed to drop his application to the Ontario court for relief from paying back child and spousal support. For her part, Martin agreed to withdraw the garnishment notice that she had served on Brett's employer. That same month, Martin remarried. She remained married until September 2001. She has not remarried since.

On October 13, 2011, the Washington State Department of Social and Health Services' Division of Child Support (DCS) received a request from the Canadian Family Maintenance Enforcement Program to enforce Brett's ongoing spousal support obligation as well as his back child and spousal support

obligations. The Canadian agency's record reflected no support payments having been made since the initial $1,300 Brett paid in September 1983. Indeed, Brett does not assert that he made any further payments except for the $6,000 payment made through his attorney.

On December 29, 2011, DCS served a notice and demand for payment on Brett. This notice and demand included only the amount due for spousal, and not child, support. When Brett challenged the amount due under the Canadian order, DCS made an internal review of the arrearage calculation. This review produced a figure of $287,900 owed through April 2012, which included the arrearages for both spousal and child support. This figure credited to Brett his original $1,300 payment, but did not credit the $6,000 payment made through his attorney in 1987.

On January 25, 2016, Brett requested an opportunity to administratively challenge DCS's efforts to enforce the order. On March 7, 2016, DCS served Brett with a notice of support debt and registration to which Brett objected. After an evidentiary hearing on June 30, 2016, an administrative law judge confirmed registration of the order and entered conclusions of law, including the following:

> 5.7 Mr. Brett was given proper notice of the request to administratively register the Order. Mr. Brett has an ongoing obligation to provide spousal support as required under the Order, as well as to pay the accrued support arrears. The clear language in the Order requires Mr. Brett to pay spousal support until the death of Ms. Martin or until the Order is modified. The Order for child and spousal support entered on September 30, 1983, in the Supreme Court of Ontario, Canada is the controlling order. Mr. Brett did not present any valid defense to nonpayment of arrears pursuant to WAC 388-14A-7125 or RCW 26.21A.530(1). Therefore, the registration of the Order should be confirmed. The Department should collect current spousal support under the terms

of the Order as well as past due spousal and child support.

> 5.8    Mr. Brett wants to remove the support arrears that have accumulated under the Order, and his ongoing obligation for spousal support.  I do not have the authority under the Department's laws and rules to modify the support obligation in the parties['] Order.  Because Mr. Brett did not establish a defense under subsection (1) of RCW 26.21A-530, this tribunal must issue an order confirming DCS' Notice of Support Debt and Registration.

Brett's request for reconsideration of the administrative order was denied.

Brett appealed to the Lewis County Superior Court, which affirmed the administrative order, concluding that Brett failed to meet his burden of establishing a permissible defense under RCW 26.21A.530 or the Washington or United States Constitutions.

> Here, Mr. Brett admitted during the administrative hearing that he does not have any of the statutory defenses required to prove invalidity of the order.  Mr. Brett further admitted the Canadian court maintains personal jurisdiction over him. . . .
>
> Additionally, Mr. Brett has provided no evidence the order was obtained by fraud, as Mr. Brett was present for the hearing when the order was issued, was represented by counsel, and agreed to the order.  The Canadian order is the controlling order with an ongoing maintenance obligation, and the order has never been vacated[,] suspended or modified.
>
> Furthermore, any argument by Mr. Brett regarding the amount or duration of maintenance would need to be addressed by the Canadian Court, as this court lacks jurisdiction to authorize those modifications.

Brett now appeals from this ruling.

II

Brett's principal argument is that, because Washington courts presume a spousal support obligation will terminate on remarriage of the support recipient, enforcement of an order from a jurisdiction that does not employ such a

- 4 -

presumption is barred by public policy considerations. However, the difference between Washington and Ontario law regarding the duration of a spousal support obligation does not amount to a manifest incompatibility of Ontario's rule with Washington's public policy.

Brett's appeal is governed by Washington's Administrative Procedure Act, chapter 34.05 RCW, which establishes the exclusive means for obtaining judicial review of an agency action. RCW 34.05.010. The party challenging a final agency order bears the burden of demonstrating that it should be overturned. RCW 34.05.570(1)(a). We review the order based on the agency record, sitting in the same position as the superior court, and do not defer to the superior court ruling. Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n, 123 Wn.2d 621, 633, 869 P.2d 1034 (1994).

Only when the petitioner demonstrates that one of the standards enumerated in RCW 34.05.570(3) is met may an agency's order be overturned. Brett does not articulate the grounds under RCW 34.05.570(3) on which he challenges the order. The State understands, and we interpret, Brett's challenge to be that the agency erroneously interpreted or applied the law. See RCW 34.05.570(3)(d). When an agency order is challenged on the basis of an error of law, we review the order de novo, although substantial weight will be given to an agency's interpretation of the law within its area of expertise. Verizon Nw., Inc. v. Emp't Sec. Dep't, 164 Wn.2d 909, 915-16, 194 P.3d 255 (2008).

The Uniform Interstate Family Support Act (UIFSA), chapter 26.21A RCW, as adopted by the Washington legislature, grants the Department of Social and

Health Services' Division of Child Support (DCS) the authority to administratively enforce a foreign support order. RCW 26.21A.500. DCS is authorized to enforce a support order to the extent not prohibited by other law. RCW 26.21A.220(2)(a). Upon registration of a foreign support order, it is enforceable in the same manner, and subject to the same procedures, as an order issued by a Washington tribunal, with the exception that it may not be modified by Washington courts. RCW 26.21A.510.

The law of the issuing jurisdiction governs the nature, extent, amount, and duration of current payments under a registered support order, as well as the computation and payment of arrearages and accrual of interest on the arrearages, and the existence and satisfaction of other obligations. RCW 26.21A.515(1)(a)-(c). The UIFSA is designed to ensure that only one controlling support order exists at a given time, permitting the issuing jurisdiction to retain continuing and exclusive jurisdiction, and preventing an enforcing state from altering the order. RCW 26.21A.150(2). The 2008 amendments to the UIFSA extended its reach to foreign provinces and countries with which the United States has a reciprocal enforcement agreement. Ontario is one such province.[1]

If the nonregistering party does not contest registration and enforcement by establishing a defense under RCW 26.21A.530(1), the order is confirmed by operation of law. RCW 26.21A.530(3). Thus, to bar enforcement of an order, there must be a legal basis preventing the State from registering it for

---

[1] Off. of Child Support Enforcement, Canada – Foreign Reciprocating Country: Official Reference Documents, U.S. DEP'T OF HEALTH & HUM. SERVS., https://www.acf.hhs.gov/css/resource/canada-frc (published Feb. 4, 2013; last reviewed May 9, 2019).

enforcement. During the adoption of the 2008 UIFSA amendments, the

legislative history of our Senate's consideration of the bill noted that:

> A Washington court may refuse to register a foreign court order for the following reasons:
> - recognition and enforcement of the order is manifestly incompatible with public policy, including the failure of the issuing foreign tribunal to observe minimum standards of due process, which include notice and an opportunity to be heard;
> - the issuing foreign tribunal lacked personal jurisdiction;
> - the foreign order is not enforceable in the issuing country;
> - the foreign order was obtained by fraud in connection with a matter of procedure;
> - a record transmitted from the foreign CSE agency lacks authenticity or integrity;
> - a proceeding between the same parties and with the same purpose is pending before a Washington court and that proceeding was the first to be filed;
> - the foreign order is incompatible with a more recent support order involving the same parties and having the same purpose if the more recent support order is entitled to recognition and enforcement under Washington law;
> - the paying parent has already paid, i.e. the alleged arrears have been paid in whole or in part;
> - the respondent neither appeared nor was represented in the proceeding in the issuing foreign country, if the law of that country (1) provides for prior notice of proceedings, and the respondent did not have proper notice of the proceedings and an opportunity to be heard; or (2) does not provide for prior notice of the proceedings.
>
> Washington presumes any foreign order is manifestly incompatible with public policy when enforcement of the order would result in a violation of any right guaranteed by the state or federal constitutions.

FINAL B. REP. ON ENGROSSED SUBSTITUTE S.B. 5498, 64th Leg., Reg. Sess.

(Wash. 2015).

The statute as enacted, RCW 26.21A.530, codifies several of these

defenses to registration and enforcement of an order, including when a party has

made full or partial payment of an arrearage. In turn, a tribunal confronted with

evidence establishing a full or partial defense "may stay enforcement of a registered support order, continue the proceeding to permit production of additional relevant evidence, and issue other appropriate orders." RCW 26.21A.530(2).

RCW 4.24.820(1) bars the enforcement by Washington courts or administrative agencies of "any order issued under foreign law, or by a foreign legal system, that is manifestly incompatible with public policy." As stated above, an order is presumed to be manifestly incompatible with public policy when it does not grant parties the same rights as the parties are granted under the Washington or United States Constitutions. RCW 4.24.820(2). This statute was enacted in conjunction with the most recent amendments to the UIFSA. LAWS OF 2015, ch. 214 § 61.

It is apparent that the chief constitutional concern embodied by the public policy exception is the right to due process.[2] While a dearth of case authority exists as to what nonconstitutional issue could amount to a manifest incompatibility of public policy, the phrase also appears in article 22(a) of the Hague Convention on the International Recovery of Child Support and Other Forms of Maintenance—a treaty that the United States, but not Canada, has ratified.[3] Commentators have sought to provide a coherent definition. An

---

[2] OFFICE OF CHILD SUPPORT ENF'T, U.S. DEP'T OF HEALTH & HUMAN SERVS., HAGUE CHILD SUPPORT CONVENTION: JUDICIAL GUIDE 32 (May 2018), https://www.acf.hhs.gov/sites/default/files/programs/css/ocse_judicial_guide.pdf [https://perma.cc/3958-GJW8].

[3] Status Table: Convention of 23 November 2007 on the International Recovery of Child Support and Other Forms of Family Maintenance, HAGUE CONF. ON PRIV. INT'L L., https://www.hcch.net/en/instruments/conventions/status-table/?cid=131 [https://perma.cc/C4XZ-FK6M].

applicable example, provided by the State Department to the Senate in facilitation of the Hague Convention's ratification, was as follows:

> "[A] U.S. competent authority could decline to recognize and enforce a decision against a left-behind U.S. parent in an abduction case where the child had been wrongfully taken or retained, on the grounds that recognition and enforcement of such decision would be manifestly incompatible with the U.S. public policy of discouraging international parental child abduction."

Robert Keith, Ten Things Practitioners Should Know About The Hague Convention of 23 November 2007 on the International Recovery of Child Support and Other Forms of Family Maintenance, 51 FAM. L.Q. 255, 262 (2017) (quoting S. TREATY DOC. No. 110-21, at 16 (2008)).

It follows that a constitutional concern that a party raises as part of its public policy defense should be of equal importance to the provision of due process in ensuring the integrity of the proceeding that produced the order. Similarly, if a party believes a public policy exists that conflicts with another sovereign's law, it should be shown to be on the order of magnitude of the policy against parental abduction of children (a public policy that we unhesitatingly recognize as extant in Washington).

The law of Ontario, the jurisdiction issuing the contested support order herein, provides that, when a support order is silent as to the effect of a support recipient's remarriage, it will remain in effect either until the recipient dies or until the order is changed by the issuing court.[4] This contrasts with Washington law, which presumes that an order will terminate upon the support recipient's

---

[4] See Bhupal v. Bhupal, (2009) 97 O.R. (3d) 230 (Can. Ont. C.A.).

remarriage unless it contains language to the contrary.[5] RCW 26.09.170(2).

In a spousal support order, the effect of remarriage is simply a durational requirement. In Washington, courts are not bound to terminate the requirement of spousal support upon the recipient's remarriage; it is simply the presumption when no language to the contrary provides otherwise. Similarly, in Ontario, courts have the discretion to provide for the termination of spousal support payments upon the recipient's remarriage.

Brett does not identify any right under the Washington or United States Constitutions that is violated by the Ontario order's continuing applicability. Neither does he identify any Washington public policy that is contravened by Ontario's law. These are his burdens in order to avail himself of the defense of manifest incompatibility with public policy.

Nevertheless, Brett insists, notwithstanding UIFSA's choice of law provision and the paucity of his constitutional argument, that enforcement of the order must be barred by public policy. In support of his contention, he relies entirely on the decision in In re Marriage of Williams, 115 Wn.2d 202, 206, 796 P.2d 421 (1990), which applied RCW 26.09.170(2) to hold that, absent specific language to the contrary in a support order, spousal maintenance terminates upon remarriage in Washington. But this, the lone case citation in Brett's entire brief, is insufficient. The Ontario court's support order explicitly states that spousal support payments will continue until Martin's death or modification of the order in Ontario. Ontario law governs. Brett has not provided a valid reason why

---

[5] Thus, each state provides for judicial alteration of the otherwise-presumed duration. In this regard, the two provisions are entirely compatible.

it should not. No Washington public policy is offended by the requirement that he petition the Ontario court for modification of its order.

III

Brett makes a second public policy argument, unsupported by any citation to any pertinent statutory or case authority, that enforcement of the 1983 support order is time-barred by the expiration of Ontario's formerly applicable statutory limitation period regulating support actions. For several reasons, this argument is without merit.

Washington law anticipates differences between jurisdictions as to statutes of limitations concerning support orders. It thus provides that, "[i]n a proceeding for arrears under a registered support order, the statute of limitation of this state or of the issuing state or foreign country, whichever is longer, applies." RCW 26.21A.515(2); see In re Marriage of Waters, 116 Wn. App. 211, 215 n.4, 63 P.3d 137 (2002).

Ontario's statutory limitation period applicable to support actions, previously 20 years, was eliminated entirely as of January 1, 2004. Limitations Act, S.O. 2002, c 24, sched. B, §§ 16, 24 (Can.). Thus, all of Brett's arrearages accruing after January 1984 are fully enforceable. This is because they never were barred prior to the repeal of the statute of limitation.[6] Each installment of a family maintenance obligation becomes a separate judgment upon its due date. In re Marriage of Sanborn, 55 Wn. App. 124, 129, 777 P.2d 4 (1989). The only

---

[6] The State cites to Schmitke v. Schmitke, 87 B.C.L.R. 2d 377 (B.C. Ct. App. 1993), for the proposition that the statute of limitation does not begin to run on child support arrears until the child reaches the age of majority. While this may be the law in British Columbia, it is not the law in Ontario. See Cooney v. Neave, (2016) O.N.S.C. 525 (Can. Ont. Sup. Ct.).

portion of Brett's arrearage that would not be enforceable is the sum of those accrued prior to January 1984.

Brett owed a total of $3,900 in missed spousal and child support payments accruing from October to December 1983. Through his attorney, he paid Martin $6,000 at the end of 1987. At the time of that payment, his monthly obligation had been reduced to $800. Thus, a $5,200 excess over his current support obligation existed at the time the payment was made. This excess over current support at the time the payment was made would apply to his oldest accrued arrears.[7, 8]

No limitation period applies to the remainder of Brett's arrearage. Nor is the difference between Ontario's and Washington's law regarding the statutory limitation period applicable to support enforcement actions a manifest incompatibility of public policy such as must be shown to bar registration and enforcement of the order. The UIFSA assumes that different sovereigns will have differing laws regarding limitation periods. It resolves this dispute by requiring deference to the law of the issuing forum. To establish a difference in limitation periods as a manifest incompatibility of public policy, Brett must do

---

[7] It is unclear whether this $6,000 payment has been credited toward Brett's arrearages. For some reason, Brett did not request that this amount be credited, either in the administrative hearing or before the superior court. As stated above, full or partial payment of an arrearage is a valid defense to enforcement of a registered support order pursuant to RCW 26.21A.530(1). The same statute also recognizes the bar of a statute of limitation precluding enforcement of *some or all* of an arrearage as a valid defense. RCW 26.21A.530(g). However, the proper forum in which to assert these defenses is at an administrative proceeding or trial, not in this court. As a general rule, we do not consider an issue raised for the first time on appeal except when such issue is a manifest error affecting a constitutional right. RAP 2.5(a); State v. McFarland, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995). Brett had the opportunity to assert such defenses at the administrative hearing and did not do so.

[8] The State concedes that all arrearages arising from missed payments predating January 1984 have been satisfied and are "uncollectable." Br. of Resp't (State) at 22.

more than simply identify the variance. He does not. At its core, this dispute is simply about a durational provision. Brett does not establish that such a difference in a durational provision amounts to a manifest incompatibility with public policy or a denial of his constitutional rights.

IV

Martin contends that she is entitled to an award of attorney fees and costs pursuant to RAP 18.9(a), which permits this court to award such fees and costs as a sanction for filing a frivolous appeal. "An appeal that is affirmed simply because an appellant's arguments are rejected is not frivolous." In re Estate of Pesterkoff, 37 Wn. App. 418, 424, 680 P.2d 1062 (1984). That Brett does not prevail in his appeal is not due to the strength of Martin's arguments. Indeed, at oral argument, neither Martin nor the State were able to articulate a standard for determining manifest incompatibility with public policy. Rather, it is due to the weakness of Brett's own argument which, nevertheless, does not fall within the realm of frivolousness. We decline to award fees under RAP 18.9.

Affirmed.

We concur:

- 13 -