# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>LALIDA SCHNURMAN,<br><br>    Respondent,<br><br>and<br><br>SETH SCHNURMAN,<br><br>    Appellant. | No. 70048-1-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION<br><br>FILED: December 30, 2013 |

APPELWICK, J. — Lalida Schnurman and Seth Schnurman dissolved their marriage and share substantially equal residential time with their two children. In calculating the parties' child support obligations, the trial court used the child support schedule and standard calculation in chapter 26.19 RCW. The trial court found Seth to be the obligor parent and ordered him to pay a monthly transfer payment of $1,300 to Lalida. Seth argues that the standard calculation does not apply in shared residential situations. We affirm.

## FACTS

Lalida Schnurman and Seth Schnurman[1] married on June 22, 2001 and separated on July 22, 2011. They have two children, who were six and eight years old at the time of dissolution.

The trial court awarded Lalida $2,000 a month in spousal maintenance for three years. The court imputed this maintenance income to Lalida at Seth's request for purposes of calculating child support.

---

[1] We refer to the parties by their first names for clarity.

After a contested proceeding, the trial court entered a final parenting plan in which Lalida and Seth share equal residential time with the children throughout the year.[2] The order stated, "The children named in this parenting plan are scheduled to reside substantially equal time with both parents. Both parents are designated the custodian of the children solely for purposes of all other state and federal statutes which require a designation or determination of custody."[3]

In calculating the parties' child support obligations, the trial court found Seth's monthly net income to be $6,338 and Lalida's to be $3,380. The trial court determined Seth to be the obligor parent. Using the standard calculation for child support obligations, the court ordered Seth to pay Lalida a monthly transfer payment of $1,300 ($650 for each child).

Seth requested a downward deviation from the standard calculation for child support.[4] The trial court denied Seth's request, finding:

> While the Husband will be spending substantial time with the children, there is no evidence this will significantly increase his costs to support the children or significantly reduce Wife's expenses to support the children. Allowing a downward deviation from the standard child support calculation will also result in insufficient funds for the Wife's household.

---

[2] For instance, during the school year, the children reside for two weeks with Seth Friday through Monday and Lalida Monday through Friday. Then after two weeks, the children reside with Lalida Friday through Monday and Seth Monday through Friday. This repeats every four weeks.

[3] The statute contemplates the designation of "the parent" with whom the children are scheduled to reside a majority of the time as the custodian, not both. See RCW 26.09.285. The designation is not challenged on appeal.

[4] Seth argued below that the statutory deviations in RCW 26.19.075 do not apply in shared residential situations. Therefore, he contends that he did not, in fact, seek a deviation. Because RCW 26.19.075 applies in shared residential situations, however, Seth's request for the trial court to decrease his monthly transfer payment can properly be characterized as a request for a downward deviation.

Seth appeals from the order of child support and amended decree of dissolution.

DISCUSSION

We review a trial court's order of child support for abuse of discretion. In re Marriage of Booth, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). A trial court abuses its discretion if its decision rests on unreasonable or untenable grounds. Dix v. ICT Grp., Inc., 160 Wn.2d 826, 833, 161 P.3d 1016 (2007). A trial court necessarily abuses its discretion if its ruling is based on an erroneous view of the law or involves incorrect legal analysis. Id.

I. Shared Residential Time

Seth argues that the standard calculation for child support obligations does not apply when parents share equal residential time. He contends that only parents with whom their children spend the majority of their residential time are entitled to a support transfer payment based on the child support schedule's standard calculation. Because the parents here share residential time, Seth contends, the trial court abused its discretion in awarding Lalida a transfer payment. He insists that neither the legislature nor any Washington court has determined the proper method for calculating the amount of transfer payment when parents share equal residential time. He therefore urges us to adopt a new formula for calculating transfer payments in such cases. He argues that trial courts must consider and equitably apportion the expenses that each parent pays for shelter, transportation, and clothing.

In short, Seth is wrong. The Washington Supreme Court, affirming this court, previously held that the statutory child support schedule applies in shared residential situations like here. State ex rel. M.M.G. v. Graham, 159 Wn.2d 623, 626, 632, 152

P.3d 1005 (2007); State ex rel. M.M.G. v. Graham, 123 Wn. App. 931, 933, 99 P.3d 1248 (2004), aff'd in part, rev'd in part on other grounds, Graham, 159 Wn.2d 623, abrogated on other grounds, In re Marriage of McCausland, 159 Wn.2d 607, 152 P.3d 1013 (2007).

Chapter 26.19 RCW is the child support schedule statute. The legislature's stated intent in enacting the statute was "to insure that child support orders are adequate to meet a child's basic needs and to provide additional child support commensurate with the parents' income, resources, and standard of living." RCW 26.19.001. The legislature also intended child support obligations to be "equitably apportioned between the parents." Id.

When entering an order of child support, the trial court begins by setting the basic child support obligation. RCW 26.19.011(1); Graham, 159 Wn.2d at 627. This obligation is determined from the statute's economic table, which is based on the parents' combined monthly net income, as well as the number and age of their children. RCW 26.19.011(1), .020. The economic table is presumptive for combined monthly net incomes of $12,000 or less. RCW 26.19.020, .065.

The trial court next allocates the child support obligation between the parents based on each parent's share of the combined monthly income. RCW 26.19.080(1). The court then determines the standard calculation, which is the presumptive amount of child support owed by the obligor parent to the obligee parent. RCW 26.19.011(8); Graham, 159 Wn.2d at 627. If requested, the court considers whether it is appropriate to deviate upwards or downwards from the standard calculation. RCW 26.19.011(4), (8). The court has discretion to deviate from the standard calculation based on such

4

factors as the parents' income and expenses, obligations to children from other relationships, and the children's residential schedule. RCW 26.19.075(1).

If the court considers a deviation based on residential schedule, it must follow a specific statutory analysis:

> The court may deviate from the standard calculation if the child spends a significant amount of time with the parent who is obligated to make a support transfer payment. The court may not deviate on that basis if the deviation will result in insufficient funds in the household receiving the support to meet the basic needs of the child or if the child is receiving temporary assistance for needy families. When determining the amount of the deviation, the court shall consider evidence concerning the increased expenses to a parent making support transfer payments resulting from the significant amount of time spent with that parent and shall consider the decreased expenses, if any, to the party receiving the support resulting from the significant amount of time the child spends with the parent making the support transfer payment.

RCW 26.19.075(1)(d). The trial court must enter written findings of fact supporting the reasons for any deviation or denial of a party's request for deviation. RCW 26.19.075(3); Graham, 159 Wn.2d at 627-28. After determining the standard calculation and any deviations, the trial court then orders one parent to pay the other a support transfer payment. RCW 26.19.011(9).

The residential schedule deviation was added to the child support schedule in 1991. LAWS OF 1991, 1st Spec. Sess., ch. 28, § 6. Before that, the Washington Child Support Guidelines allowed for a residential credit if the child resided overnight with both parents more than 25 percent of the time. Helen Donigan, Calculating and Documenting Child Support Awards Under Washington Law, 26 GONZ. L. REV. 13, 45 (1991). A separate worksheet provided space for determining the residential credit for each parent. Id. This special worksheet also applied to cases where parents split

residential time. Id. at 45-46. The legislature did not retain this formula for residential credit against child support with the 1991 addition of statutory deviations. See RCW 26.19.075(1)(d).

In Graham, Michelle Cunliffe and Richard Graham shared equal residential time with their two daughters. 123 Wn. App. at 933. The trial court estimated Graham's net monthly child support obligation to be $872 and Cunliffe's to be $437. Id. at 934. However, the court deviated downwards from Graham's standard calculation, finding that the girls spent significant time with him and the deviation did not result in insufficient funds for Cunliffe. Id.

Several years later, the State petitioned to modify child support. Id. at 934. Graham asked the trial court to apply In re Marriage of Arvey, 77 Wn. App. 817, 894 P.2d 1346 (1995), by analogy and split the parents' child support obligation equally, because of the children's residential time with him. Graham, 123 Wn. App. at 933. The Arvey court established a formula for determining child support when one child resides primarily with one parent and another child resides primarily with the other parent. Id. at 939.

On appeal, we refused to apply the Arvey formula to shared residential arrangements. Id. at 940-41. Instead, we held that the trial court must use the standard calculation and statutory deviations in shared residential time cases. Id. at 941. RCW 26.19.075(1)(d) permits deviation from the presumptive transfer payment based on the children's residential schedule. Id. Such a deviation could therefore be warranted when children share residential time equally between parents. Id. But, a deviation would still be discretionary and should focus on the legislature's primary intent to maintain

reasonable support for the children in each household. Id. "Thus," we concluded, "it appears that the Legislature has already considered and provided for the situation presented here." Id.

On review before the Washington Supreme Court, Graham argued that chapter 26.19 RCW does not adequately guide trial courts in calculating child support obligations when parents share residential time equally. Graham, 159 Wn.2d at 633. Therefore, Graham argued, the Arvey formula should apply in such situations. Id. The Supreme Court disagreed and affirmed our opinion. Id. at 636. The court emphasized that the plain text of RCW 26.19.075 gives trial courts discretion to deviate from the standard calculation based on residential schedule. Id. The Graham court therefore refused to read a new formula into the statute when it already contemplates shared residential situations. Id. "Because the statute explicitly gives the trial court discretion to deviate from the basic child support obligation based on the facts of a particular case, a specific formula is neither necessary nor statutorily required to ensure the parents' child support obligation is properly allocated." Id. (emphasis added).

Seth argues that the issue presented in Graham is different than the issue here, so Graham does not control. Instead, he contends that the standard calculation applies only to primary residential parents.[5] Seth ignores the express holding of Graham. The

---

[5] The statute does not recognize primary or secondary parents. The words "custody" and "visitation" were removed from the statute when the Parenting Act of 1987, chapters 26.09, 26.10 RCW, was adopted to remove the emotional, power-laden inference flowing from those terms. LAWS OF 1987, ch. 460, §§ 5-6; State v. Veliz, 176 Wn.2d 849, 855-56, 298 P.3d 75 (2013); see also In re Marriage of Kovacs, 121 Wn.2d 795, 800-01, 854 P.2d 629 (1993). Similarly, use of primary residential parent should be avoided. Father and Mother, or the parents' names, would be the appropriate designations here.

Graham court was presented with and rejected an alternative formula for calculating transfer payments when parents share residential time. Id. 635-36. Instead, the Graham court held that the standard calculation and statutory deviations for transfer payments apply when parents share residential time equally. Id. at 636. Graham is dispositive here. The statute already allows for deviation based on residential time and prescribes how to do it.[6]

Adopting Seth's proposed formula would also require us to ignore clear statutory language requiring courts to follow the same process for all child support obligations. A stated purpose of the child support schedule is to reduce "the adversarial nature of the proceedings by increasing voluntary settlements as a result of the greater predictability achieved by a uniform statewide child support schedule." RCW 26.19.001(3). Seth's alternative ad hoc formula defeats this predictability. The statute mandates that schedule applies "[i]n each county of the state" and "[i]n all proceedings in which child support is determined or modified." RCW 26.19.035(1). Likewise, the statute requires that "[t]he provisions of this chapter for determining child support and reasons for deviation from the standard calculation shall be applied in the same manner by the court, presiding officers, and reviewing officers." RCW 26.19.035(1). This undoubtedly includes shared residential situations like the one at issue here.

---

[6] Seth's reliance on In re Marriage of Holmes, 128 Wn. App. 727, 117 P.3d 370 (2005), does not compel a different conclusion. Holmes did not involve a 50/50 shared residential situation like here. Id. at 740. The Holmes court simply held that the trial court acted within its discretion in terminating the father's child support obligation. Id. at 740-41. Though the father made significantly more money than the mother, the residential schedule had changed and the son resided a majority of the time with the father. Id. at 740-41.

The trial court here followed the process mandated by the child support schedule and Graham. The court first determined the parties' combined monthly net income. The court identified Seth as the obligor parent. Using the standard calculation, the court ordered Seth to pay Lalida a $1,300 monthly transfer payment. Upon Seth's request, the court considered whether his shared residential time with the children necessitated a downward deviation. The court found that it did not, because Seth's time with the children did not significantly increase his costs to support them and a downward deviation would leave Lalida with insufficient funds. This was the correct process under the statute and under Graham for the parties' shared residential arrangement. It would have been error for the trial court to apply the alternative formula Seth requested.

We hold that the standard calculation and residential schedule deviation in the child support schedule apply when parents share equal residential time like here. Therefore, the trial court did not err in ordering a transfer payment from Seth to Lalida based on the standard calculation.

## II.  Attorney Fees

Lalida requests her attorney fees on appeal on three bases: the frivolous nature of the appeal, Seth's intransigence, and her need and Seth's ability to pay.

Lalida first argues that the appeal is frivolous under RAP 18.9(a), because this matter was already decided in Graham. An appeal is frivolous if there are no debatable issues upon which reasonable minds might differ and it is so totally devoid of merit that there is no reasonable possibility of reversal. Tiffany Family Trust Corp. v. City of Kent, 155 Wn.2d 225, 241, 119 P.3d 325 (2005). All doubts as to whether the appeal is frivolous should be resolved in favor of the appellant. Id. An appeal that is affirmed

simply because the arguments are rejected is not frivolous. Id. Seth argues that Graham is distinguishable, because there the parties did not dispute that the standard calculation was the proper starting point for calculating transfer payments. Here, Seth argues that the standard calculation does not apply. Though this is a meritless argument treading right up to the line, it is not so entirely devoid of merit as to be wholly frivolous.

Second, Lalida argues that even if the appeal is not frivolous, Seth has been intransigent by making a straightforward application of the child support schedule unduly difficult. Intransigence is demonstrated by conduct such as litigious behavior, filing repetitive or excessive motions, or discovery abuses. In re Marriage of Wallace, 111 Wn. App. 697, 710, 45 P.3d 1131 (2002). Lalida makes no showing of intransigence on appeal—and the trial court found none below—so we decline to award fees on this basis.

Lastly, she contends that she is entitled to fees under RAP 18.1(a) and RCW 26.09.140, because of her relative need and Seth's ability to pay. The trial court found that Lalida has the need for attorney fees, but Seth has no further ability to pay. Lalida does not argue that the trial court erred in refusing to award fees based on Seth's inability to pay. Despite her obvious need and the fact that she did not seek these added expenses, we see no evidence in the parties' available financial information of a significant positive change in Seth's ability to pay.[7] We therefore deny Lalida's request for fees.

---

[7] Lalida moved to strike Seth's financial affidavit as untimely filed. Seth filed his financial affidavit on November 15, 2013, two days after oral argument. This violates

III.   Citation to Unpublished Opinion

RAP 10.3(a)(6) requires the argument portion of an appellate brief to include citations to legal authority. RAP 10.7 and 18.9(a) authorizes us to sanction, sua sponte, a party or counsel for failing to comply with rules of appellate procedure. In Lalida's response brief, her counsel cited and relied on an unpublished appellate decision from this court. This violates GR 14.1(a), which prohibits citing unpublished Washington court of appeals opinions as authority. For this violation, we impose a $100 sanction against Lalida's counsel, payable to the registry of this court.

We affirm.

WE CONCUR:

---

RAP 18.1(c), which requires a party to file a financial affidavit no later than 10 days prior to oral argument. We therefore grant Lalida's motion to strike Seth's financial affidavit.