IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | No. 31961-0-III |
| | ) | |
| SHANNON MARIE LANGFORD, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CHAD FRANKLIN LANGFORD, | ) | |
| | ) | |
| Appellant. | ) | |

BROWN, A.C.J. – Chad F. Langford appeals the trial court's denial of his request
to equally split child support with Shannon M. Langford. He contends the court erred by
not granting him a residential schedule deviation since the parties stipulated to split
residential time with their two children. We find no abuse of discretion, and affirm.

FACTS

The Langfords married in 2000, had two children, and separated in 2012. Ms.
Langford works for the State of Washington's Department of Social and Health Services
with a net monthly income of $3,429.46. Mr. Langford is a partner with an advertising
company with a monthly net income of $6,998.32. The parties do not dispute the

court's net income calculation. In the final parenting plan, the court adopted the parties' stipulation to "share the children equally in one week increment." Clerk's Papers (CP) at 54. The basic child support obligation for both children is $2,102. The court allocated .671 of the support obligation to Mr. Langford and .329 to Ms. Langford. Mr. Langford requested a residential schedule deviation to $472.89 per month for the resulting $1,449.36 per month transfer payment using a formula he based upon the equal residential time he spends with the children.

The court denied his request, stating, "With regard to the residential credit, there was argument that it should be granted . . . and I considered what would be in the best interest of the kids . . . . I'm not going to grant the residential credit in this case. I do not believe that it's appropriate." Report of Proceedings (RP) at 24-25. In its findings of fact, the court reiterated, "The court has heard extensive argument regarding the application of a residential credit for the father for calculating his monthly support obligation. The court has found that no residential credit shall be granted to the father." CP at 78 (Finding of Fact 2.20). Mr. Langford unsuccessfully requested reconsideration. He now appeals.

## ANALYSIS

The issue is whether the trial court erred by abusing its discretion in denying Mr. Langford's request for a residential schedule deviation when calculating child support. Mr. Langford contends he should have been granted a deviation since both parents equally share residential time.

No. 31961-0-III
*In re Marriage of Langford*

We review a trial court's decision on an order of child support for an abuse of discretion. *State ex rel. M.M.G. v. Graham*, 159 Wn.2d 623, 632, 152 P.3d 1005 (2007). A trial court abuses its discretion if the decision rests on unreasonable or untenable grounds. *In re Marriage of Leslie*, 90 Wn. App. 796, 802-03, 954 P.2d 330 (1998). We will not reverse the trial court's decision absent a manifest abuse of discretion. *Id.* Moreover, the "reviewing court cannot substitute its judgment for that of the trial court unless the trial court's decision rests on unreasonable or untenable grounds." *Id.* at 802.

Chapter 26.19 RCW sets forth the child support schedule. In determining the amount of child support owed, the trial court begins by setting the basic support obligation. RCW 26.19.011(1). This is based on the statute's economic table based on the parents' combined monthly net income considering the number and age of the children. RCW 26.19.011(1). The economic table is presumptive for combined monthly net incomes of $12,000 or less, the case here. RCW 26.19.065. The court next allocates the child support obligation between the parents based on each parent's share of the combined monthly income. RCW 26.19.080(1). The court then determines the standard calculation, the presumptive amount of child support owed by the obligor parent to the obligee parent. RCW 26.19.011(8). The obligor is the parent with the greater theoretical support obligation. Here, Mr. Langford is the obligor parent.

The next step, is to consider any deviations from the support obligation. RCW 26.19.011(4), (8). Relevant here is a requested deviation downward based on

3

residential schedule.[1] RCW 26.19.075(1). "The court may deviate from the standard calculation if the child spends a significant amount of time with the parent who is obligated to make a support transfer payment." RCW 26.19.075(1)(d). The purpose of granting a deviation is to recognize the "increased expenses" that a parent sometimes has when placement is shared. RCW 26.19.075(1)(d). The court, however, "may not deviate on that basis if the deviation will result in insufficient funds in the household receiving the support to meet the basic needs of the child." *Id.* The trial court must enter written findings of fact supporting the reasons for any deviation or denial of a party's request for deviation. RCW 26.19.075(3).

The court considered Mr. Langford's request for a deviation and stated in its oral ruling, "I considered what would be in the best interest of the kids . . . . I'm not going to grant the residential credit in this case. I do not believe that it's appropriate." RP at 25. In its findings of fact, the court reiterated, "The court has heard extensive argument regarding the application of a residential credit for the father for calculating his monthly support obligation. The court has found that no residential credit shall be granted to the father." CP at 78 (finding of fact 2.20).

Mr. Langford argues this is insufficient. Where a court must enter required findings, those "findings must be 'sufficiently specific to permit meaningful review.'" *In re Det. of LaBelle,* 107 Wn.2d 196, 218, 728 P.2d 138 (1986). The findings should

---

[1] Before 1991, this deviation was referred to as a residential credit. *In re Marriage of Schnurman,* 178 Wn. App. 634, 640, 316 P.3d 514 (2013) (citing Helen Donigan, *Calculating and Documenting Child Support Awards Under Washington Law,* 26 Gonz. L. Rev. 13, 45 (1991), *review denied,* 180 Wn.2d 1010 (2014)).

indicate the factual bases for the ultimate conclusions, but the degree of particularity required depends on the circumstances of each case. *Id.* When written findings are unclear, we may look to the trial court's oral ruling to help interpret the implicit findings. *In re Marriage of Kimpel*, 122 Wn. App. 729, 735, 94 P.3d 1022 (2004). The court in its oral ruling stated it considered the financial information of the parties and that reducing the presumptive child support amount would not "be in the best interest[s] of the kids" and therefore, not "appropriate." RP at 25. While the usual finding in these cases is that the deviation will result in insufficient funds to the obligee's household, RCW 26.19.075(3) merely requires the court to enter written findings of fact "that specify reasons for any deviation or any denial of a party's request for any deviation." The trial court's abbreviated finding of fact unnecessarily complicates appellate review. We urge diligence in this area. Nevertheless, since we may review the oral ruling in conjunction with the court's finding of fact, the combination satisfies RCW 26.19.075(3) for review purposes.

Next, Mr. Langford argues the court should use a concise formula like found in *In re Marriage of Arvey*, 77 Wn. App. 817, 894 P.2d 1346 (1995). The *Arvey* court established a formula for determining child support when one child resides primarily with one parent and another child resides primarily with the other parent. *Id.* at 939. Mr. Langford argues this formula should be used where parents have equal residential placement. This argument has been rejected by our Supreme Court in *Graham*.

5

In *Graham*, Michelle Cunliffe and Richard Graham shared equal residential time with their two daughters. 123 Wn. App. at 933. The trial court estimated Mr. Graham's net monthly child support obligation to be $872 and Ms. Cunliffe's to be $437. *Id.* at 934. However, the court deviated downwards from Mr. Graham's standard calculation, finding that the girls spent significant time with him and the deviation did not result in insufficient funds for Ms. Cunliffe. *Id.* Several years later, the State petitioned for a modification. In response, Mr. Graham asked the trial court to apply *Arvey* and reduce his support obligation further because of the children's residential time with him. *Graham*, 123 Wn. App. at 933. Division One of this court rejected Mr. Graham's *Arvey* based argument. *Id.* at 940-41. Our Supreme Court affirmed, holding the plain text of RCW 26.19.075 gives trial courts discretion to deviate from the standard calculation based on residential schedule; thus, a new formula was not necessary. *In re Marriage of Schnurman*, 178 Wn. App. 634, 636, 316 P.3d 514 (2013), *review denied*, 180 Wn.2d 1010 (2014). Recently, Division One of this court reiterated, "[T]he standard calculation and residential schedule deviation in the child support schedule apply when parents share equal residential time." *Schnurman*, 178 Wn. App. 634, 643, 316 P.3d 514 (2013) *review denied*, 180 Wn.2d 1010 (2014).

Based on both *Graham* and *Schnurman*, the trial court followed the correct process. The court first determined the parties' combined monthly net income. The court identified Mr. Langford as the obligor parent since his obligation was greater than Ms. Langford's. Using the standard calculation, the court ordered Mr. Langford to pay

Ms. Langford a $1,449.36 monthly transfer payment. Upon Mr. Langford's request, the court considered whether his shared residential time with the children necessitated a downward deviation. The court found that it did not because it was not in the children's best interest and inappropriate based on the case facts. This process was correct. The trial court was not bound to apply Mr. Langford's requested deviation. Accordingly, the trial court did not abuse its discretion in ordering a transfer payment from Mr. Langford to Ms. Langford based on the standard calculation.

Ms. Langford requests attorney fees under RCW 26.09.140, which allows this court, in its discretion, to order a party to pay for the cost to the other party of maintaining the appeal, including attorney fees. This provision gives the court discretion to award attorney fees to either party based on the parties' financial resources, balancing the financial need of the requesting party against the other party's ability to pay. *In re Marriage of Pennamen*, 135 Wn. App. 790, 807-08, 146 P.3d 466 (2006). Under RAP 18.1(c), the parties had until 10 days prior to the date this appeal is set on the docket to file affidavits, setting forth their financial need and ability to pay. They did not comply; thus, Ms. Langford's request is denied.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

7

No. 31961-0-III
*In re Marriage of Langford*

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Brown, A.C.J.

I CONCUR:

_____
Korsmo, J.

31961-0-III

LAWRENCE-BERREY, J. (dissenting) — The majority affirms the lower court's decision to deny the father a residential credit deviation. In doing so, the majority combines *insufficient* written findings with an *erroneous* "best interest of the kids" oral finding. Chapter 26.19 RCW, which governs setting child support, does not contemplate a "best interest of the kids [sic]" standard. Because two wrongs do not make a right, I dissent.

I agree with the first part of the majority's analysis: The presumptive child support obligation is determined by reference to the statute's economic table. This table uses the parents' combined net monthly income and the number and ages of the children to determine the basic support obligation. This table uses these variables to arrive at a precise figure for parents with combined net incomes of $12,000 and less.

I also agree with the second part of the majority's analysis that the presumptive child support obligation for an obligor parent is determined by multiplying the obligor parent's percentage of total net income by the basic support obligation.

I part with the majority when it states, "[t]he obligor is the parent with the greater theoretical support obligation." Majority at 3. Under settled law, the obligor parent is the noncustodial parent:

> Child support payments have historically been the obligation of the noncustodial parent. . . . The historical presumption was reflected in the Uniform Child Support Guidelines, which were approved in 1982 by the Washington State Association of Superior Court Judges (ASCJ).
> . . . As this court recently noted,
> > [i]n those situations [where children reside a majority of the time with one parent], the obligor parent is the one with whom the children do not reside a majority of the time and that parent makes a transfer payment to the parent with whom the children primarily reside.

*In re Marriage of Holmes*, 128 Wn. App. 727, 738-39, 117 P.3d 370 (2005) (quoting

*State ex rel. M.M.G. v. Graham*, 123 Wn. App. 931, 939, 99 P.3d 1248 (2004), *aff'd in*

*part, rev'd in part on other grounds*, 159 Wn.2d 623, 152 P.3d 1005, *abrogated on other*

*grounds by In re Marriage of McCausland*, 159 Wn.2d 607, 152 P.3d 1013 (2007)).

But under the majority's reasoning, a parent who has his children only 30

overnights per year can *receive* a substantial child support payment from the custodial

parent if the latter earns substantially more than the former. Such a result is contrary to

historical practice. *Id.*

Here, because both parents have equal overnights with their children, there is no

custodial parent. In such a scenario, it is as equally random and erroneous to order the

father to pay his presumptive payment to the mother as it would be to order the mother to

pay her presumptive payment to the father. Yet the former is exactly what the lower

court did.

This randomness is resolved by RCW 26.19.075(1)(d), which provides:

2

> The court may deviate from the standard calculation if the child spends a significant amount of time with the parent who is obligated to make a support transfer payment. The court may not deviate on that basis if the deviation will result in insufficient funds in the household receiving the support to meet the basic needs of the child or if the child is receiving temporary assistance for needy families. When determining the amount of the deviation, the court shall consider evidence concerning the increased expenses to a parent making support transfer payments resulting from the significant amount of time spent with that parent and shall consider the decreased expenses, if any, to the party receiving the support resulting from the significant amount of time the child spends with the parent making the support transfer payment.

The legislature granted courts discretion on whether to allow a deviation and in determining the amount of the deviation. This discretion is necessary to accomplish the legislative purpose of equitably apportioning the child support obligation between the parents. RCW 26.19.001. Indeed, this purpose of equitable apportionment is achieved by adhering to the legislature's directive that courts consider the actual increase and decrease in expenses brought about by an obligor parent having a significant amount of residential time.

Some expenses are variable (e.g., food, transportation, and entertainment) and depend upon the degree of residential shifting; whereas some expenses are fixed (e.g., housing) and depend very little upon the degree of residential shifting. In turn for granting courts discretion to grant or deny deviations, the legislature tasked courts to make well-reasoned decisions. This task is accomplished by requiring courts to actually enter written findings of fact when any deviation is granted or denied.

3

Here, the legislative purpose of achieving a well-reasoned decision has been thwarted not once but twice: First, the written findings clearly are inadequate. The majority concedes this; second, the oral finding applies the wrong legal standard, not the standard set forth in RCW 26.19.075.

I, therefore, would reverse the lower court and remand for entry of appropriate findings using those considerations specifically set forth in RCW 26.19.075(1)(d).

_____
Lawrence-Berrey, J.

4