# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of )
) No. 72427-4-I
SCOTT JAMES MCGOWAN, )
) DIVISION ONE
         Appellant, )
) UNPUBLISHED OPINION
      and )
)
YELENA MCGOWAN, )
)
         Respondent. ) FILED: November 23, 2015
_____ )

TRICKEY, J. — Scott McGowan appeals the trial court's order of child support following the dissolution of his marriage to Yelena McGowan. Because Scott fails to demonstrate any reversible error or abuse of discretion, we affirm.

## FACTS

Scott and Yelena[1] married in July 1998 and separated on July 11, 2013. They have two sons, born in August 2000 and April 2005. In August 2013, the trial court entered a temporary order providing for the children to reside with Scott a majority of the time and spend every other weekend with Yelena. The court also imputed income to Yelena and ordered her to pay child support to Scott. In November 2013, a family court commissioner ordered Scott to pay monthly spousal maintenance in an amount to be reduced based on increases in Yelena's gross earnings. Before trial, the parties agreed to a parenting plan with an equally shared residential schedule. The remaining issues for trial included child support and the division of marital assets and debts.

---

[1] We refer to the parties by their first names, no disrespect is intended.

On June 11, 2014, the first day of trial, the trial court signed the agreed parenting plan. At trial, both Scott and Yelena offered testimony and documentary evidence to establish their respective incomes and expenses in their separate households. Yelena also testified that she expected her monthly expenses to increase significantly under the new permanent parenting plan. She intended to move to an apartment with a separate bedroom for the boys and in a location close to one of their schools. Yelena testified to her estimation of increased expenses in rent, food, transportation, and other costs.

Ultimately, the parties stipulated to their respective gross monthly income figures of $9,823.23 for Scott and $6,000.00 for Yelena. During closing arguments, the parties clarified that they also stipulated to the monthly net income figures listed in Scott's proposed child support worksheet. Scott asked the court for a deviation from the standard calculation of child support based on the shared residential schedule under RCW 26.19.075(1)(d).

Based on the income figures in the worksheet as stipulated by the parties, the trial court determined the standard calculation for both children to be $1,533.82 from Scott and $1,071.18 from Yelena. The trial court determined Scott to be the obligor parent and ordered him to pay Yelena a monthly transfer payment of $1,533.82. The court denied Scott's request for a deviation from the standard calculation, stating the following reason: "A deviation would result in insufficient funds to support the basic needs of the children in the recipient household."[2]

---

[2] Clerk's Papers (CP) at 884.

Scott appeals.[3]

ANALYSIS

We review child support orders, including rulings on requests for deviation from the standard calculation, for abuse of discretion. In re Marriage of Bell, 101 Wn. App. 366, 370-72, 4 P.3d 849 (2000). A trial court abuses its discretion by basing its decision on unreasonable or untenable grounds or by applying an erroneous view of the law or incorrect legal analysis. In re Marriage of Schnurman, 178 Wn. App. 634, 638, 316 P.3d 514 (2013). "This court will not substitute its own judgment for that of the trial court where the record shows that the trial court considered all relevant factors and the award is not unreasonable under the circumstances." In re Marriage of Fiorito, 112 Wn. App. 657, 664, 50 P.3d 298 (2002).

RCW 26.19.075(1)(d) permits trial courts to deviate from the standard statutorily-imposed child support schedules:

> **Residential schedule.** The court may deviate from the standard calculation if the child spends a significant amount of time with the parent who is obligated to make a support transfer payment. The court may not deviate on that basis if the deviation will result in insufficient funds in the household receiving the support to meet the basic needs of the child or if the child is receiving temporary assistance for needy families. When determining the amount of the deviation, the court shall consider evidence concerning the increased expenses to a parent making support transfer payments resulting from the significant amount of time spent with that parent and shall consider the decreased expenses, if any, to the party receiving the support resulting from the significant amount of time

---

[3] A commissioner of this court referred to the panel Yelena's motion to strike and request for sanctions based on certain factual assertions in an appendix to Scott's opening brief. The panel has the ability to review the record designated on appeal and to determine the facts relevant to a fair resolution of the issues presented. Accordingly, we need not decide Yelena's motion to strike and we deny her request for sanctions.

the child spends with the parent making the support transfer payment.

This deviation is discretionary, however, and deviation from the standard child support schedules "remains the exception to the rule," to "be used only where it would be inequitable not to do so." In re Marriage of Burch, 81 Wn. App. 756, 760, 916 P.2d 443 (1996); see also, Schnurman, 178 Wn. App. at 641 (deviation under RCW 26.19.075(1)(d) could be warranted when children share residential time equally between parents, but "would still be discretionary and should focus on the legislature's primary intent to maintain reasonable support for the children in each household"). "Unless specific reasons for deviation are set forth in the written findings of fact and are supported by the evidence, the court shall order each parent to pay the amount of support determined by using the standard calculation." RCW 26.19.075(2).

Scott first assigns error to the statement in the child support order that "the support obligation is based upon" Yelena's monthly net income of $4,173.99, when the parties stipulated to a monthly net income of $4,928.89.[4] He claims that the trial court erred "[t]o the extent [it] relied on this erroneous income figure to conclude that a deviation would result in insufficient funds in the mother's household."[5]

But Scott concedes that the trial court properly listed Yelena's monthly net income as $4,928.89 on the worksheet, which was attached and incorporated by reference to the support order, and used $4,928.89 as her net income for

---

[4] CP at 882-83, 892.
[5] Br. of Appellant at 9.

4

purposes of determining the standard child support calculation. We also note that the child support order lists Scott's monthly net income as $7,039.25, while the worksheet lists his monthly net income as $7,522.46. Similarly, the support order lists the standard calculation as $1,558.07 with a reference to "Worksheet line 17," which in turn lists the standard calculation as $1,533.82, consistent with the trial court's handwritten and initialed statement of the transfer payment on the order.[6] The parties do not dispute that the trial court used the income numbers listed in the worksheet to determine the standard calculation of $1,533.82 as listed in the worksheet, rather than $1,558.07 as listed in the order.

Because the trial court's handwritten statement of the transfer payment is consistent, as Scott concedes, with the standard calculation resulting from the higher monthly net incomes as listed on the worksheet, it appears that the order of child support contains scrivener's errors in its statements as to Yelena's monthly net income, Scott's monthly net income, and the standard calculation. Scott does not seek remand for correction of these errors. And contrary to Scott's claim, it is also clear that the discrepancy in the numbers listed in the order does not implicate the court's decision regarding deviation.

According to RCW 26.19.075(1)(d), the court "may not deviate" based on the residential schedule "if the deviation will result in insufficient funds in the household receiving the support to meet the basic needs of the child." Scott challenges the trial court's finding here that "[a] deviation would result in insufficient funds to support the basic needs of the children in the recipient

---

[6] CP at 883, 894.

5

household."[7] But Scott concedes that Yelena testified at trial to an estimated increase of $1,635.00 in monthly expenses based on her increased residential time with the children under the new parenting plan, for a total of $5,578.00 in monthly expenses. The trial court was entitled to rely on her testimony, and we do not weigh the evidence or credibility of witnesses. In re Marriage of Rich, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996). Because, as Scott concedes, Yelena's expected monthly expenses of $5,578.00 exceeds her monthly net income of $4,928.89, the trial court did not err in denying his request for a deviation under RCW 26.19.075(1)(d) for the reason stated.

In essence, Scott argues that RCW 26.19.075(1)(d) required the trial court to compare the impact of a deviation in some particular amount on the total financial circumstances of each household. We disagree. RCW 26.19.075(1)(d) expressly provides that the trial court is to consider evidence concerning increased expenses to the obligor parent and other such factors "[w]hen *determining the amount* of the deviation" after first determining whether deviation from the standard calculation is appropriate, not when determining whether to deviate in the first instance, which is what Scott seeks here.[8] Cf. State ex rel. J.V.G. v. Van Guilder, 137 Wn. App. 417, 424, 154 P.3d 243 (2007) (under RCW 26.19.075(1)(e), when parent seeks deviation based on support of children from another relationship, court must consider "total circumstances of both households" in deciding "whether a deviation is appropriate").

---

[7] CP at 884.
[8] (Emphasis added.)

6

Given Scott's resources and his reduced residential time with the children under the new parenting plan compared with Yelena's increasing expenses under the new parenting plan, the trial court's decision to deny Scott's request for a deviation from the standard statutory calculation was not "inequitable." See Burch, 81 Wn. App. at 760.

Scott also contends that the trial court erred by allocating to him 62 percent of health care and special child rearing expenses, rather than 60.4 percent as indicated on the child support worksheet and required by RCW 26.19.080(2) and (3). He further contends the trial court failed to properly apportion his support obligation between the two children. Because he fails to contend or demonstrate that he raised these issues in the trial court, we decline to consider them for the first time on appeal. RAP 2.5(a); see In re Marriage of Wallace, 111 Wn. App. 697, 705, 45 P.3d 1131 (2002).

Yelena requests an award of attorney fees based on her need and Scott's ability to pay, as well as the arguable lack of merit in his appeal. See RCW 26.09.140; In re Marriage of Leslie, 90 Wn. App. 796, 807, 954 P.2d 330 (1998). Exercising our discretion, we deny Yelena's request.

Affirmed.

Trickey, J

WE CONCUR:

7