# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DAVID D. BLUHM, | No. 52833-9-II |
| Appellant, | |
| v. | |
| SAMANTHA L. PETRONAVE, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, C.J. — David D. Bluhm appeals the trial court's final parenting plan, child support order, and order denying his motion for reconsideration involving his 12 year old daughter, EP-B, entered after a relocation hearing. Bluhm contends (1) the trial court erred in denying his motion for reconsideration because the guardian ad litem (GAL) changed his recommendation during the relocation hearing; (2) the trial court erred by entering a parenting plan with inherent conflicts; (3) the trial court erred in not allowing Bluhm to argue for a graduated or step increase in his child support payment, in not limiting his child support obligation to 45 percent of his income, and in not matching the child support order to the trial court's oral ruling; (4) the trial court erred in not allocating joint decision-making authority for EP-B's religious upbringing; (5) the trial court erred in not setting forth a visitation schedule for special occasions; and (6) the trial court erred in allowing Bluhm to be served with proposed orders without mandatory warnings. We disagree and affirm.

FACTS[1]

Bluhm and Samantha Starkey (formerly known as Petronave) are the parents of EP-B,[2] born in 2008. In 2011, the parties entered into an agreed parenting plan and child support order. At the time, they both lived in the Tacoma area.

The 2011 parenting plan designated Starkey as the primary residential parent, but the parenting plan provided that EP-B would reside with Bluhm every other weekend. The parenting plan also included a schedule for special occasions; it provided that EP-B would be with the mother on Mother's Day; the father on Father's Day; and with each parent on an alternating basis for EP-B's birthday. The parenting plan further stated that "[e]ach parent may exercise their religious preferences with the Child." Clerks Papers (CP) at 22. In the 2011 child support order, the trial court calculated Bluhm's monthly income as $400 because he was involuntarily underemployed and Starkey's monthly income as $1,482. The trial court ordered Bluhm to pay $50 per month in child support to Starkey.

In May 2018, Starkey filed a notice of intent to relocate to Albany, Oregon. Bluhm objected and requested that the parenting plan be modified by appointing him the primary residential parent. The trial court appointed a GAL.

---

[1] Neither party provides this court with a statement of the facts and procedure relevant to the issues presented with citation to the record as required by RAP 10.3(a)(5). Also, contrary to RAP 10.3(a)(6), Bluhm fails to provide this court with legal authority to support several of his arguments. Further, contrary to RAP 10.3(a)(8), Bluhm attaches two documents to the appendix of his brief which are not included in our record. Lastly, Bluhm combines in his brief the assignment of error, issues, and argument sections contrary to RAP 10.3(a)(4), (6). While these types of flaws generally preclude review, we nevertheless exercise our discretion under RAP 1.2(a) and reach Bluhm's issues to the extent the record and the briefing allow.

[2] We use the child's initials to protect their identity. We mean no disrespect.

On August 9, 2018, the GAL recommend that EP-B reside full time with Bluhm during the school year and with Starkey during the summer. The GAL, however, noted that Starkey and EP-B were closely attached and that E-PB "adores [the mother] and has indicated that [the child] would like to spend the majority of time with [the] mother." CP at 50.

The matter proceeded to a hearing.[3] The trial court granted Starkey's request to relocate with EP-B, finding that Bluhm failed to meet his burden in demonstrating that the detrimental effect of a relocation outweighed the benefit of the change in location to child and the relocating parent. The trial court also found that the agreed parenting plan from 2011 served the child's "best interests" and that there was no reason for the Court to disrupt Starkey being the primary residential parent. Verbatim Report of Proceedings (VRP) (Sept. 4, 2018) at 6, 15.

In its oral ruling, the trial court noted that the GAL was "pretty unequivocal" about EP-B's preference to remain with the mother. VRP (Sept. 4, 2018) at 7. The trial court also noted that the GAL indicated that EP-B wanted Starkey to be "the primary residential parent." VRP (Sept. 4, 2018) at 7. Later, the trial court stated that it was "interpreting [the GAL's] testimony to favor mother" and that if the trial court was "wrong about that, the other evidence presented in this case certainly [favors] . . . Starkey remaining as the primary residential parent." VRP (Sept. 4, 2018) at 15. The trial court ordered that there "will be joint decision-making." VRP (Sept. 4, 2018) at 18.

Following the trial court's oral ruling, Starkey drafted proposed final orders and provided a copy to Bluhm. Bluhm objected to the final orders.

---

[3] The verbatim report of proceedings of the relocation hearing is not included in our record.

At the hearing for entry of final orders, Bluhm expressed frustration that on the "fourth day of trial [] the [GAL] flipped his recommendation." VRP (Sept. 28, 2018) at 11.

In its final parenting plan, the trial court ordered that EP-B reside the majority of the time with Starkey and reside with Bluhm one weekend per month from Friday at 5:00 pm until Sunday at 6:00 pm. Bluhm would provide Starkey with his preference of weekends. The parenting plan also set forth a detailed list of holidays, designated which parent would spend the holiday with EP-B, and designated at what time the visitation would begin and end. This included Memorial Day, Fourth of July, and Labor Day. The trial court also ordered that during the summer when EP-B is out of school, EP-B will alternate between the mother and father's house every two weeks, starting the week school gets out and ending the final week of summer.

The trial court further ordered that each parent may make "day-to-day decisions for the [child] when [the child is] with you" and "[e]ach parent shall have an equal right to include the [child] in his or her religious activities and expressions." CP at 146, 155. The parenting plan also stated that EP-B would spend Father's Day with the father, Mother's Day with the mother; and "[o]ther occasions important to the family" with the mother if Starkey gives notice to Bluhm "by the end of December each year, with a 3 month advance notice." CP at 151. The parenting plan further states that it

> does not and cannot delineate all aspects of their child-rearing rights and responsibilities. Therefore, the parents agree to use the parenting plan as a framework for the interactions concerning the children. The parents further agree to operate in all respects in good faith toward one another in the best interests of the children.

CP at 156.

As for child support, the trial court imputed Bluhm's net monthly income as $4,369 and Starkey's net monthly income as $2,693. The trial court ordered Bluhm to pay Starkey $606.39 per month in child support for EP-B and $749.07 per month when EP-B turns 12 years old.

Bluhm filed a motion for reconsideration, which the trial court denied. Bluhm appeals.

ANALYSIS

While Bluhm does not object specifically to the relocation order, he raises several challenges to the trial court's 2018 parenting plan, child support order, and the trial court's denial of his motion for reconsideration. We disagree with Bluhm's challenges and affirm.

A.    STANDARD OF REVIEW

We review a trial court's fashioning of a final parenting plan for an abuse of discretion; the trial court's discretion in this area is "broad." *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012), *cert. denied*, 568 U.S. 1090 (2013). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Custody of Halls*, 126 Wn. App. 599, 606, 109 P.3d 15 (2005). A decision is manifestly unreasonable if the decision is outside the range of acceptable choices based on the facts and applicable legal standard. *Id.* We do not reweigh the evidence to determine whether we would reach a different conclusion. *In re Marriage of McNaught*, 189 Wn. App. 545, 561, 359 P.3d 811 (2015), *review denied*, 185 Wn.2d 1005 (2016).

Similarly, we review child support orders for abuse of discretion. *In re Marriage of Schnurman*, 178 Wn. App. 634, 638, 316 P.3d 514 (2013), *review denied*, 180 Wn.2d 1010 (2014). And we review an order denying a motion for reconsideration for abuse of discretion. *Phillips v. Greco*, 7 Wn. App. 2d 1, 9, 433 P.3d 509 (2018).

B.      MOTION FOR RECONSIDERATION REGARDING GAL'S RECOMMENDATION

Bluhm first contends that the trial court should have granted his motion for reconsideration based on CR 59(a)(3) and CR 59(a)(8) because "the GAL flip-flopping his decision on the fourth day of trial was traumatic and confounding." Br. of Appellant at 3. We disagree

CR 59(a)(3) states that a verdict may be vacated if there has been an "accident or surprise which ordinary prudence could not have guarded against" and it "materially affect[s] the substantial rights of [the aggrieved party]." And CR 59(a)(8) states that a verdict may be vacated if there was an "[e]rror in law occurring at the trial and objected to at the time by the party making the application."

Bluhm failed to designate the verbatim report of proceedings for review; thus, we are unable to review what took place on the fourth day of trial when Bluhm alleges the GAL "flip-flopp[ed]" in his decision and whether Bluhm objected. Br. of Appellant at 3. Generally, failure to provide an adequate record precludes us from reviewing an issue on appeal. *See Stiles v. Kearney*, 168 Wn. App. 250, 259, 277 P.3d 9 (a party seeking review has the burden of perfecting the record so that the reviewing court has all relevant evidence before it), *review denied,* 175 Wn.2d 1016 (2012). However, the record provided for our review shows that the GAL noted that EP-B "adores [the mother] and has indicated that [the child] would like to spend the majority of time with [the] mother." CP at 50. Also, the trial court, in its oral ruling, stated that the GAL was "pretty unequivocal" about EP-B's preference to remain with the mother and that the GAL indicated that EP-B wanted Starkey to be "the primary residential parent." VRP (Sept. 4, 2018) at 7. The trial court then stated that it was "interpreting [the GAL's] testimony to favor mother" and that if the trial court was "wrong about that, the other evidence presented in this case certainly [favors] . . . Starkey remaining as the primary residential parent." VRP (Sept. 4, 2018) at 15.

While the GAL report in our record states that the GAL recommended that EP-B reside full time with Bluhm during the school year and with Starkey during the summer, the fact that the GAL testified that EP-B wanted to reside with her mother was not a surprise that materially affected the aggrieved party's rights nor was it an error of law. Therefore, the trial court did not abuse its discretion in denying Bluhm's motion for reconsideration based on CR 59(a)(3) or CR 59(a)(8).

C.      INHERENT CONFLICTS WITHIN THE FINAL PARENTING PLAN

Bluhm next contends, without elaboration, that there are several "inherent scheduling conflicts in the parenting plan" that are not in EP-B's best interests and specifically identifies Memorial Day, the end of the school year, the overall summer schedule, Fourth of July, and Labor Day.  Br. of Appellant at 3.  We disagree.

RCW 26.09.002 provides that a parenting plan must be guided first and foremost by the "best interests of the child."  The best interests of the child are "served by a parenting arrangement that best maintains a child's emotional growth, health and stability, and physical care."  RCW 26.09.002.

Here, the 2018 parenting plan sets forth a detailed list of holidays, designates which parent would spend the holiday with EP-B, and designates at what time the visitation would begin and end.  This includes Memorial Day, Fourth of July, and Labor Day.  The trial court also ordered that during the summer when EP-B is out of school, she will alternate between the mother and father's house every two weeks, starting the week school gets out and ending the final week of summer.

Based on the clear language of the 2018 parenting plan, the trial court set forth in detail the residential schedule, including the schedule for Memorial Day, the end of the school year, the

7

overall summer schedule, Fourth of July, and Labor Day. We fail to see a conflict that disregards EP-B's best interests. Accordingly, Bluhm's argument fails.

D.      CHILD SUPPORT

Bluhm next contends that "[t]he trial court erred in not allowing [Bluhm] [the] [sic] opportunity to discuss a graduated or step payment plan for . . . child support." Br. of Appellant at 4. He also alleges the trial court erred in ordering him to pay child support that exceeded 45 percent of his net income without good cause and that the trial court's child support order does not follow the trial court's oral ruling. We hold that Bluhm's arguments fail.

1.      Graduated or Step in Child Support Payment

Bluhm cites no legal authority as required under RAP 10.3(a)(5) for his argument that he should have been allowed to argue for a graduated or step payment plan for child support. Nevertheless, we note that in Washington, child support obligations are calculated according to the statutory support schedule. *See* RCW 26.19.020. Bluhm's argument that he should be allowed to gradually increase his children support payment would be inconsistent with our State's statutory support schedule.

2.      45 Percent Rule

RCW 26.19.065(1) provides: "Neither parent's child support obligation owed for all his or her biological or legal children may exceed forty-five percent of net income except for good cause shown."

Here, the trial court imputed Bluhm's net monthly income as $4,369 and Starkey's net monthly income as $2,693. The trial court ordered Bluhm to pay Starkey $606.39 per month in child support for EP-B and $749.07 per month when EP-B turns 12 years old. Neither $606.39

nor $749.07 are more than 45 percent of Bluhm's net monthly income. Accordingly, Bluhm's argument fails.

### 3. Oral Ruling

Bluhm argues that the "child support order does not follow the Oral Ruling." Br. of Appellant at 6. But he does not explain the discrepancy, nor does he point to the discrepancy on the child support order. Without argument in support of the issue presented, together with citations to legal authority and references to relevant parts of the record, we cannot reach this issue. RAP 10.3(a)(6).

### E. DECISION MAKING AUTHORITY FOR RELIGIOUS UPBRINGING

Bluhm contends that "[t]he trial court erred in not changing the language and reference to previous sections of the parenting plan regarding freedom of religion practiced with child" contrary to both the state and federal constitutions. Br. of Appellant at 6. We disagree.

The parties' 2011 parenting plan states that "[e]ach parent may exercise their religious preferences with the Child." CP at 22. The parties' 2018 parenting plan states that each parent may make "day-to-day decisions for [the child] when [the child is] with you" and "[e]ach parent shall have an equal right to include the children in his or her religious activities and expressions." CP at 146, 155.

Bluhm fails to elaborate how his constitutional rights were violated in the difference in language between the two parenting plans. "'Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.'" *Ursich v. Ursich*, 10 Wn. App. 2d 263, 278, 448 P.3d 112 (2019) (quoting *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290, *review denied*, 136 Wn.2d. 1015, (1998)), *review denied*, 194 Wn.2d 1022 (2020); RAP 10.3(a)(6). Accordingly, we reject Bluhm's challenge.

9

F.    SPECIAL OCCASION SCHEDULE

Bluhm next contends the trial court erred in not allowing EP-B "to exercise special occasions with each family" and this resulted in a final order not in EP-B's best interests. Br. of Appellant at 6. We disagree.

As discussed above, RCW 26.09.002 provides that a parenting plan must be guided by the "best interests of the child." The best interests of the child are "served by a parenting arrangement that best maintains a child's emotional growth, health and stability, and physical care." RCW 26.09.002.

Here, the 2018 parenting plan states that EP-B will spend Father's Day with the father, Mother's Day with the mother; and may spend "[o]ther occasions important to the family" with the mother if Starkey gives notice to Bluhm "by the end of December each year, with a 3 month advance notice." CP at 151. While a similar provision relating to Bluhm is not in the parenting plan, the parenting plan clarifies that it

> does not and cannot delineate all aspects of their child-rearing rights and responsibilities. Therefore, the parents agree to use the parenting plan as a framework for the interactions concerning the children. The parents further agree to operate in all respects in good faith toward one another in the best interests of the children.

CP at 156.

Based on the clear language of the 2018 parenting plan, the trial court allowed EP-B to spend special occasions with each party. It also provided flexibility for the parties to operate in good faith. A family gathering such as a wedding or funeral would fall into this category, allowing the parties to act in good faith and in the best interests of EP-B in such circumstances. Accordingly, Bluhm's argument that the trial court failed to consider EP-B's best interests in its order regarding special occasions fails.

G.      FAILURE TO SERVE MANDATORY WARNING DOCUMENTS

Lastly, Bluhm argues, without elaboration, that the trial court erred in allowing "[Starkey] and her Counsel to both serve me . . . Proposed Final Orders that had directly reference yet were missing mandatory language" and "Mandatory Warnings were deleted." Br. of Appellant at 7. Bluhm then refers this court to "CP Sub#138 pages 8 lines 10 to end of document." Br. of Appellant at 7. But Bluhm's reference to the record does not refer to or identify any mandatory language or address mandatory warnings. Moreover, Bluhm provides no legal authority to support his argument that proposed orders must include the "mandatory language." This type of passing treatment of an issue is insufficient to warrant judicial consideration. *Ursich*, 10 Wn. App. 2d at 278; RAP 10.3(a)(6). Accordingly, we reject Bluhm's argument.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, C.J.

We concur:

Sutton, J.

Cruser, J.