IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of:

CHRISTINE CRABTREE,

                Respondent,

and

DONALD CLINTON CRABTREE,

                Appellant.

No. 86664-8-I

DIVISION ONE

UNPUBLISHED OPINION

HAZELRIGG, C.J. — In his fourth post-dissolution appeal, Donald Crabtree challenges the trial court's entry of a permanent parenting plan. Because he fails to establish that the trial court abused its discretion by entering a parenting plan that maintains restrictions on his in-person visitation with his children until he complies with court-imposed requirements pertaining to his use of physical discipline, we affirm.

## FACTS

This appeal resumes litigation of modifications to a parenting plan.[1] Our opinion in the prior appeal provides the following relevant background facts:

---

[1] *See In re Marriage of Crabtree*, No. 80165-1-I (Wash. Ct. App. Apr. 20, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/801651.pdf; *Crabtree v. Crabtree*, No. 81164-9-I (Wash. Ct. App. Aug. 2, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/811649.pdf; *In re Marriage of Crabtree*, No. 84155-6-I (Wash. Ct. App. June 26, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/841556.pdf.

Donald and Christine Crabtree[2] dissolved their marriage in 2018. A South Carolina court entered a final custody order that provided for the parties' four dependent children to live primarily with Christine and to reside with Clint every other weekend. Soon after the entry of this order, both parties relocated to Washington State.

In 2020, based on Clint's acknowledged use of physical discipline against the parties' oldest child, in violation of an express provision of the 2018 South Carolina custody order, the superior court entered a restraining order suspending his visitation with the children, who were then between the ages of 6 and 12, and also found him to be in contempt. The restraining order provided that Clint could petition the court to resume his residential time after he completed a court-approved parenting class, and submitted a declaration to the court acknowledging that physical discipline constitutes corporal punishment and stating that he will not administer corporal punishment to the children (consistent with the terms of the 2018 South Carolina order). In the interim, the 2020 order allowed him two telephone or video calls per week with the children, during specific one-hour windows. A year later, when Clint still had not submitted the required declaration, the court reissued a protection order that included the same provisions.

In 2022, when the second restraining order was about to expire, Christine filed a motion for adequate cause to modify the parenting plan. She sought entry of a Washington parenting plan that reflected the provisions of the prior South Carolina court order and also incorporated the provisions of the 2020 and 2021 restraining orders that suspended Clint's in-person visitation. Christine also requested that she no longer be required to consult with Clint on certain major issues involving the children, as required under the 2018 order.

Clint then filed his own motion for an adequate cause determination that sought to modify the parenting plan and motions for contempt, a restraining order, and to appoint a guardian ad litem (GAL). After a hearing, a superior court commissioner granted Christine's motion for adequate cause and entered her proposed temporary parenting plan. At the same time, the commissioner denied Clint's motion for adequate cause and his other motions, and specifically found that even if Christine violated provisions of the South Carolina custody order, her violations were not intentional or willfully contemptuous. Clint sought revision of the commissioner's orders. After a hearing, the superior court denied revision.

---

[2] Because the parties share the same last name, we refer to them by their first names for clarity. No disrespect is intended.

Further, the record in the prior opinion established that Donald Crabtree used his middle name and there we referred to him as Clint. However, in the current case, he refers to himself as Donald and we will refer to him as such.

- 2 -

*In re Marriage of Crabtree*, No. 84155-6-I, slip op. at 2-3 (Wash. Ct. App. June 26, 2023) (footnotes omitted) (unpublished), https://www.courts.wa.gov/opinions/pdf/841556.pdf.[3]  Donald appealed to this court. *Id*. at 1.  We affirmed the decision of the trial court and awarded Christine her reasonable attorney fees and costs pursuant to RAP 18.9(a).  *Id*. at 8-9.

On February 22, 2024, Donald and Christine returned to superior court for a hearing on her motion to modify the parenting plan.  She requested that the court adopt the temporary parenting plan as the final parenting plan.  The plan reflected the provisions of the restraining orders, including the requirement that Donald submit a declaration to the court that he would not engage in physical discipline of the children.  As of the hearing, Donald had completed the required parenting class, but had not submitted the declaration.[4]  He had not had in-person visits with the children since March 2020.

Donald argued that the temporary parenting plan did not reflect the children's best interests and there was no basis for the imposed restrictions. As to the requirement that he enter a declaration that he would refrain from physical punishment, he attempted to attack the original prohibition on his use of corporal punishment imposed by the South Carolina court that decided the dissolution and stated that he would "provide evidence to show that there is no basis for that

---

[3] This opinion is unpublished and cited pursuant to GR 14.1(c) only as necessary for a well-reasoned opinion.

[4] In September 2022, Donald offered a declaration in which he stated he would no longer apply corporal punishment, but noted that he provided the declaration under duress because it was his religious right and obligation to physically discipline his children.  The court did not accept the declaration.

restriction and that it may be best if the [Washington] court were to simply drop the requirement based off of the evidence." He also requested a parenting coordinator to work with the family, rather than reunification counseling.

The trial court noted that three of the Crabtree children were 12 years old or older and asked, "[I]s there anything being communicated to the court about the wishes of the children?" Christine responded that nothing had been submitted to the court by either party. Donald stated that he wanted to testify about "what [he] believe[d] the children desired." The court informed Donald that such testimony would likely be hearsay and inadmissible. Donald inquired whether the court would accept affidavits from a counselor and the court explained that "a professional opinion can certainly reference original statements made by a person that would otherwise be hearsay if they form the basis of an opinion that the expert is testifying about," but the expert would "would still need to be subject to cross-examination and there would have to be some way either [sic] the parties have stipulated to the submission of the report." Donald further inquired whether the court would accept signed and sworn affidavits by the children. The court informed him that an affidavit is an out-of-court statement and a form of hearsay that does not offer an opportunity for cross-examination. Additionally, the court noted an obvious "concern that anyone might have over how such a statement [was] signed . . . [such as if there was] any pressure put on the individual to make such a statement, especially when that person might be a minor." The court expressed the intention to make evidentiary decisions as they were presented.

Ultimately, only Christine and Donald testified. Donald stated that he believed that a court order restricting him from engaging in physical punishment "attacks [his] identity," because "when you make [him] make a statement that's against [his] constitutionally protected rights, like freedom of religion, freedom of speech, freedom of expression, now you are saying [he] won't do something that [his] biblical roots and culture would have [him] do." Donald explained, "I believe it's a biblical duty to apply 'spare the rod spoil the child' to apply discipline." However, during his testimony, Donald stated that he would like to give the declaration that he would not use physical discipline while he was on the stand. The following exchange occurred during his direct examination:

> [DONALD:] I think the court has made it clear it wants me to acknowledge I won't spank the children from here on out. And I would like to give that declaration now while I am on the stand so that that can be resolved.
>
> THE COURT: So, let me be clear about something, Mr. Crabtree, and I don't want to interrupt your testimony. The order that's in effect now and has been in effect for some time is that you sign a declaration. And I haven't seen—I know there is that 130-page document.
> . . . .
> THE COURT: But, again, the problem is that doesn't comport with court rule and it's not actually a difficult declaration and that's a concern that I have is that not myself, I may have reviewed the matter on revision, but, ultimately, I think [the commissioner] said this declaration needs to be entered and it seems to me that I have not seen evidence that it has occurred and that concerns me because the court ordered a declaration, not testimony.
> So I hope—you are welcome to say what you like in your testimony here under oath, but understand that, as far as I can tell right now, there hasn't been compliance with that instruction, specifically.

The trial court entered findings of fact and conclusions of law on the petition to modify the parenting plan and ordered Christine's proposed parenting plan as

final. The trial court acknowledged that Donald "believes he has a religious obligation to physically discipline his children and that forcing him to sign a statement that he will not do so either intrudes upon his constitutional rights to freedom of religion or freedom of speech or both." However, the court further noted:

> Constitutional rights are not without limit. Additionally, while their rights are not as expansive as they are for adults, children have their own constitutional rights, including to be free from threat of physical harm. While the father certainly has a protected right to believe in corporal punishment as a matter of religious conviction, the right of his convictions does not allow him to behave towards others however he chooses. After signing such a pledge, he would be free to continue to believe and say that he lives by the biblical notion that "to spare the rod is to spoil the child." A pledge not to engage in physical discipline doesn't force him to change his beliefs or what he says about them, but it clearly would be significant in reminding him that the courts have previously ordered him not to do so.

The final parenting plan entered by the trial court included the provision that Donald would not have in-person visits with the children until he "submit[s] a declaration asserting that he will not administer any corporal punishment of [sic] the children." The court also ordered reunification counseling "with a qualified therapist or counselor."

Donald timely appealed.

ANALYSIS

As he did previously, Donald represented himself in trial court and continues to do so on appeal. Pro se litigants are held to the same standard as attorneys and are bound by the same rules of procedure and substantive law. *In re Marriage of Olson*, 69 Wn. App. 621, 626, 850 P.2d 527 (1993).

We review a trial court's rulings concerning provisions of a parenting plan for abuse of discretion. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46, 940 P.2d 136 (1997). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *Id.* at 46-47.

I.      Scope of Review

We first address several issues that Donald raises in his arguments that are beyond the scope of this appeal.

A.      Evidentiary Issues

Throughout his briefing, Donald refers to professional evaluations and expert reports to support his claims concerning his relationships with the children, the propriety of his method of discipline, the need for a parenting coordinator, and Christine's purported psychological issues. Donald attempted to reference reports and testify as to the content of statements from his experts, but in the absence of those experts appearing to testify, laying the foundation for their statements, and being subjected to cross-examination, the trial court excluded the evidence. As a reviewing court, we consider on appeal only the evidence that was admitted in the trial court. *Morgan v. Briney*, 200 Wn. App. 380, 394, 403 P.3d 86 (2017). Because Donald's expert evidence was not admitted in the trial court, it may not be considered on appeal.

Moreover, Donald does not specifically assign error to the trial court's exclusion of this evidence. *See* RAP 10.3(a)(4). Instead, he refers to the evidence as it relates to other assignments of error and claims. For example, he claims "the

court's decision to prohibit the Father from using corporal discipline is unsupported by the evidence, including psychological evaluations." Similarly, in support of his request for a parenting coordinator, Donald argues, "The trial court ignored multiple recommendations from professionals who had evaluated the family dynamics." None of these evaluations or reports are properly before us on appeal as assignments of error for review or as part of the record. Thus, Donald's arguments premised on this evidence necessarily fail.

In addition to his reliance on the excluded expert reports, Donald frequently alleges in briefing that the trial court erred by improperly excluding his statements as hearsay and admitting Christine's hearsay statements. He claims "the court unfairly obstructed the Father's attempt to introduce evidence of the children's interests through cross[-]examination, while selectively allowing hearsay testimony favorable to the Mother." He also argues that "the trial court's selective application of hearsay suppressed the Father from fully presenting evidence" of the children's wishes. As with the evidentiary rulings, Donald does not assign error to the court's hearsay rulings. He provides neither the legal framework necessary to examine the trial court's application of the hearsay rules nor the analysis to demonstrate that the trial court erred in its application of the rules. This failure to assign error and provide argument and citations to authority as required by RAP 10.3(a) precludes our consideration of any alleged error. *Emmerson v. Weilep*, 126 Wn. App. 930, 939-40, 110 P.3d 214 (2005). Therefore, to the extent that Donald's arguments are premised on the court's allegedly erroneous hearsay rulings, they also fail.

B.    Assessment of Credibility and Weighing of Facts

In order to support many of his claims, Donald asserts that Christine's testimony and behavior undermine her credibility.  He argues that the trial court abused its discretion by allowing speculative testimony from Christine and "the court's failure to recognize the Mother's lack of genuine knowledge about the children's preferences and seeking to suppress their ability to communicate with the Father, undermines her credibility and motivations."  He also claims that the court "erred by failing to scrutinize and address the Mother's self-serving modifications of court orders, inconsistent testimony, and manipulative behavior."

These contentions all rest on the trial court's assessment of the evidence and testimony.  "'We will not substitute our judgment for the trial court's, weigh the evidence, or adjudge witness credibility.'  We cannot review a fact finder's credibility determinations on appeal."  *In re Vulnerable Adult Pet. for Winter*, 12 Wn. App. 2d 815, 839, 460 P.3d 667 (2020) (citation omitted) (quoting *In re Marriage of Greene*, 97 Wn. App. 708, 714, 986 P.2d 144 (1999)).  As we specifically explained to Donald in the opinion that resolved his prior appeal from this litigation, "this court does not find facts, resolve conflicts in the evidence, or reweigh the evidence to determine if we would reach a different conclusion from the trial court."  *Crabtree*, No. 84155-6-I, slip op. at 8.

While Donald may disagree with the results, the trial court heard testimony from both parties, assessed their credibility, and weighed the evidence accordingly.  Once again, "[t]he trial court was entitled to give credit to Christine's testimony."  *Id.*  We do not second guess the results and, therefore, reject Donald's

claims that are based on the trial court's alleged failure to properly assess Christine's credibility.

II.      Declaration about Physical Discipline

Donald contends that the trial court forced him to sign a pledge that he would not use physical discipline on his children which violated his rights to religious freedom and freedom of speech under the First Amendment to the United States Constitution and article I, section 11 of the Washington Constitution.  He specifically asks this court to engage in de novo review of whether this requirement infringed upon his rights to free speech and religion.  However, in the trial court, Donald repeatedly asserted his willingness to sign the pledge and, therefore, invited any error he now claims on appeal.

"The invited error doctrine prohibits a party from setting up an error below and then complaining of it on appeal." *In re Marriage of Morris*, 176 Wn. App. 893, 900, 309 P.3d 767 (2013).  The doctrine even applies to alleged issues of constitutional magnitude.  *State v. Heddrick*, 166 Wn.2d 898, 909, 215 P.3d 201 (2009).

Throughout his testimony, Donald expressed his willingness to declare that he would not use corporal punishment.  To reiterate, he expressly stated during his direct examination, "I think the court has made it clear it wants me to acknowledge I won't spank the children from here on out.  And I would like to give that declaration now while I am on the stand so that that can be resolved."  He also specifically offered to testify and then sign a document.  Unsolicited, he plainly stated, "I am willing to give the statement and I'm willing to say it and commit to

not giving them physical discipline." Given these multiple affirmative assertions, Donald invited any error as to the declaration and, therefore, waived any claim regarding a violation of his constitutional rights by virtue of being required to sign a declaration that he would not physically discipline the children.

III.    Consideration of Children's Wishes

Next, Donald argues that "the trial court failed to properly implement the statutory requirement under RCW 26.09.002(5) to evaluate the children's wishes, despite testimony and affidavits indicating the children's positive relationship with the Father."

We note that RCW 26.09.002 neither includes a subsection (5) nor establishes a statutory requirement to consider the wishes of children in dissolution proceedings. Rather, RCW 26.09.002 outlines the legislature's intention that "the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities." RCW 26.09.002 does not require consideration of the children's preferences.[5] Donald's argument on this matter is inapposite.

---

[5] In his reply brief, Donald concedes that RCW 26.09.002 does not include a subsection (5), but contends that his argument remains valid because "RCW 26.09.002 establishes the court's obligation to determine parental responsibilities in the children's best interests, and RCW 26.09.187 provides the detailed criteria for fulfilling that obligation." Specifically, Donald cites RCW 26.09.187(3)(a)(i) and (v) and alleges that "the trial court's failure to adequately ascertain and consider the children's preferences, as well as its selective admission of evidence, violate these mandates." We do not consider arguments raised for the first time in the reply brief. *In re Marriage of Sacco,* 114 Wn.2d 1, 5-6, 784 P.2d 1266 (1990).

IV.     Right to Freedom from Physical Discipline

Related to his assignment of error regarding the declaration, Donald avers that the trial court erroneously asserted that the children have a constitutional right to be free from physical discipline. He contends "the court's decision to prohibit the Father from using corporal discipline is unsupported by the evidence, including psychological evaluations, and demonstrates an improper targeting of the Father's cultural practices regarding discipline, weaponized by the Mother to alienate the Father over the past four years." Donald's claims fail for several reasons.

Donald is correct that neither the federal nor the state constitution has been interpreted to include such a right. Indeed, "the reasonable use of corporal punishment as a means of discipline" is not prohibited. RCW 26.44.015(2). Additionally, "the physical discipline of a child is not unlawful when it is reasonable and moderate and is inflicted by a parent or guardian for the purposes of restraining or correcting the child." RCW 9A.16.100(1). However, Donald fails to establish that he has standing to argue that the trial court incorrectly asserted the children's constitutional rights. The standing doctrine generally prohibits a party from asserting another person's rights. *In re Marriage of Zier*, 136 Wn. App. 40, 44, 147 P.3d 624 (2006). We must determine whether a party has standing to challenge an issue before deciding the merits. *See In re Marriage of T*, 68 Wn. App. 329, 335, 842 P.2d 1010 (1993). Generally, "a person lacks standing to vindicate the constitutional rights of a third party." *In re Guardianship of Cobb*, 172 Wn. App. 393, 401, 292 P.3d 772 (2012). Because Donald has failed to establish standing

in order challenge the trial court's statements with respect to the children's constitutional rights, we decline to consider this assignment of error.[6]

V.    Failure To Appoint Parenting Coordinator

Finally, Donald contends that the trial court abused its discretion "by failing to appoint a Parenting Coordinator or Guardian Ad Litem (GAL) despite overwhelming evidence and recommendations that neutral third-party intervention was necessary."  He asserts that ongoing parental conflict and "the Mother's repeated violations of joint decision-making responsibilities and attempts to alienate the children, justifies the need for both a Parenting Coordinator and potentially a GAL."  Additionally, he claims "the Mother's actions throughout the proceedings demonstrate an ongoing need for neutral oversight."

Donald's assertions here also rely on the excluded expert evidence as well as his allegations concerning Christine's behavior and credibility.  As addressed previously, these arguments are not only unavailing, but beyond the scope of what we may properly consider in this appeal.  Thus, Donald fails to demonstrate that the trial court's decision to require reunification counseling rather than appoint a parenting coordinator or GAL was an abuse of discretion.

VI.    Attorney Fees on Appeal

Christine requests an award of reasonable attorney fees and costs on appeal pursuant to RAP 18.9(a).  RAP 18.9(a) "permits this court to award such

---

[6] Donald's related challenges to the court's statements about physical punishment rely on the expert evidence and Christine's behavior analyzed *supra* in parts I.A. and I.B. and need not be further considered here.

fees and costs as a sanction for filing a frivolous appeal." *Brett v. Martin*, 9 Wn. App. 2d 303, 316, 445 P.3d 568 (2019). "An appeal is frivolous if there are no debatable issues on which reasonable minds might differ and it is so totally devoid of merit that there is no reasonable possibility of reversal." *In re Marriage of Schnurman*, 178 Wn. App. 634, 644, 316 P.3d 514 (2013).

Here, as in the prior case, most of Donald's assignments of error attack the trial court's assessment of Christine's credibility or rest on simply rearguing the evidence. This is despite our clear explanation of the law on those matters in the opinion issued in Donald's previous appeal. Donald attempts to introduce evidence not considered by the trial court and broadly alleges error in the trial court's evidentiary rulings without citing the any pertinent law, much less applying it to the facts of this case. Finally, he complains of errors that resulted from his own actions and unprompted assertions in the trial court. His appeal presents no debatable issues and is devoid of merit. As such, we award Christine reasonable attorney fees and costs, contingent upon her compliance with the additional procedural requirements set out in the RAPs.

Affirmed.

_____

WE CONCUR:

_____    _____
Díaz, J.                      Mann, J.